

# CLARKE F. AHLERS, P.C.
### ATTORNEY-AT-LAW

ATHOLTON SQUARE
10450 SHAKER DRIVE, SUITE 111
COLUMBIA, MARYLAND 21046

TELEPHONE: 410.740.1444
FACSIMILE: 410.740.0048

31 August 2022

Via ECF

Honorable Ellen L. Hollander
U.S. District Court Judge
U.S. Courthouse
101 W. Lombard Street
Baltimore, MD 21201

      Re:    *United States v. Jacky McComber*
              Crim. No. ELH-21-036

Dear Judge Hollander:

     Please accept this letter to supplement authority for my assertion that the government has a duty to look for *Brady* material, at least under the circumstances of this case. The short version is this: the individual prosecutor *has a duty to learn* of any favorable evidence known to the others acting on the government's behalf in the case. *Kyles v. Whitley*, 514 U.S. 419 (1995) (emphasis added).

Introduction

     In *United States v. Blankenship*, 19 F.4th 685 (4th Cir. 2021), Judge Niemeyer considered *Brady* implications, post-conviction, in a criminal case involving federal mine safety and health standards. The defendant, Blankenship, was charged under 30 U.S.C. § 820(d) and 18 U.S.C. § 371. A Petition for Writ of Certiorari is pending before the Supreme Court, No. 21-1428.

     The *Blankenship* opinion is important to defense counsel's assertion. In the opinion, Judge Niemeyer first noted that Department of Justice policies require prosecutors to "develop a process for review of pertinent information to ensure that discoverable information [was] identified." Defense counsel notes that he made no argument to this Court that the duty originated from the DOJ policies.[1]

---

[1] The specific DOJ policies applicable to federal prosecutors were not part of the Fourth Circuit opinion. After the *Blankenship* trial the United States Department of Justice Office of Professional Responsibility undertook a review of two former Assistant United States Attorneys.

However, *Blankenship* makes clear that *Brady* evidence is not limited to that known to the prosecutors.

> Due process requires that in a criminal prosecution, the government must disclose to the defendant evidence favorable to him if the suppression of that evidence would deny him a fair trial. "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

> The Court in *Brady* held that the prosecution's suppression of evidence that is favorable to the accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* And evidence *favorable to the defendant* includes not only exculpatory evidence but also evidence that the defendant can use to impeach government witnesses. *See Giglio v. United States*, 405 U.S. 150, 153–54 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985). Just as the *Brady* rule does not depend on the good faith, *vel non*, of the prosecutor, it also is not limited to evidence known only to the prosecutor. Thus, the obligation applies to "evidence known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). (Emphasis in original.)

In *United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990), the Fourth Circuit held that a *Brady* violation is not shown when the "exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked."

Counsel asserts that the only logical corollaries to these opinions are: (1) prosecutors must make some effort to learn what is known to others acting on the government's behalf (such as Contracting Officers, Contracting Officers Representatives, Contracting Specialists, and OIG Investigators) and (2) must look at a source where a reasonable defendant would have looked if the reasonable defendant is prohibited by law from accessing that source.

In this case, McComber and her lawyer are not permitted to access the NSA facility or to physically research any NSA file not provided to them by the government.

---

The report of OPR investigation is part of the Petitioner's (Blankenship's) Appendix sent to the Supreme Court. Defense counsel reviewed the Appendix. OPR alleged two attorneys recklessly violated DOJ discovery rules and policies, including United States Attorney Manual Section 9-5.001(C)(1)-(3). The policy is appended as Exhibit 1 to this letter only for the convenience of the Court.

2

## Where a Reasonable Defendant Would Look in the *McComber* Case

A reasonable defendant would first recognize that the law of the United States requires certain records be permanently maintained by the government according to statutory retention requirements. The United States Code, at 44 U.S.C. § 3101, requires that "essential transactions of the agency" and [records] "necessary to protect the legal and financial rights ... of persons directly affected by the agency's activities" be preserved. The Code of Federal Regulations at 35 C.F.R. Subchapter B explains how to implement the requirement of § 3101. Department of Defense Directive DoD 5015.2 provides guidance to the DoD records management program and criteria for electronic records management. The National Security Agency's Policy 1-6 provides guidance on records management policy and responsibilities for all agency employees for the life cycle of records. FAR 4.805 requires NSA to comply with National Archives and Records Administration (NARA) General Record Schedule (GRS) 1.1. The applicable retention schedule for the Ironbridge contract – assuming no litigation – is six years. NARA GRS 1.1 Item 011.

A reasonable defendant would know that a Contracting Officer must maintain a contract file. CFR § 4.802. A Contracting Officer's Representative is also required to maintain a contract file. Specifically, DFAR 201.602-2 requires CORs to adhere to DoD Instruction 5000.72 and the DoD COR Guidebook.[2] DoD Instruction 5000.72, Enclosure 3, at § 3.d. requires an individual COR file for each contract. *Id.* The COR Handbook requires the same thing. In sum, NSA CORs who worked on the Ironbridge contract were required by law to maintain a COR contract file.

As the Court recalls, the DoD COR Handbook, at page 89, required the COR file to be inserted into the CO contract file at completion of the contract or more frequently at the direction of the Contracting Officer. Ms. Sulewski testified that this was not her experience of the practice at NSA.

The Court now knows that the Ironbridge CORs must have created one or more COR contract files. Moreover, the absence of a great number of documents from the Ironbridge official file implies the existence of other files. Assuming the existence of a COR file at any time, the NSA

---

[2] During the hearing, Ms. Sulewski was unfamiliar with whether the DoD Contracting Officer's Representatives Manual, in evidence as Defendant's Motions Exhibit 3, applied to NSA. After returning to the office, defense counsel confirmed that DFAR 201.602-2 (iii) applies the COR Guidebook to all DoD agency CORs. In 2012, the COR manual was titled "COR Handbook." In 2021, the replacement COR manual was titled "COR Guidebook." The two are the same thing: a book that sets forth the responsibilities of CORs in Department of Defense agencies.

cannot destroy the COR contract files.[3] Assuming that the COR files are digital files, defense counsel is not aware of any authority that permits DoD CORs to destroy the digital file before the applicable retention schedule.

Therefore, any reasonable defendant in the position of the accused would look in the COR files for the Ironbridge contract for – among other things – evidence of work performed by the Program Manager. McComber and her lawyer have no access to the files. The government has unlimited access; it is inexplicable how the government could investigate, indict, and prosecute McComber without checking these files. Additionally, any reasonable defendant would also look for all the information contained in the list used by the Court during the careful evaluation of all defense requests for discovery, including *Brady*, during the afternoon of August 30, 2022 in COR files.

As of August 30, 2022, no person had located and inspected a single physical COR file. It is unclear whether some of the digital "searches" included a search of any digital COR file.

Defense counsel asserts that the government has a constitutional duty to look at the COR file or files for the Ironbridge Contract during the period of the Indictment for *Brady* material. The government has a constitutional duty to look in all COR or Contracting Officer Specialist files, such as Megan Collins' file for the period surrounding October 10, 2012 (the Guinther letter).

Conclusion

Thank you for the opportunity to supplement the oral argument made on behalf of Ms. McComber during the *Brady* motions hearing.

Very truly yours,

/s/

Clarke F. Ahlers, Esquire

cc: AUSA's McDonald & Gray, Special AUSA Cooch by ECF

---

[3] CFR Title 36, Chapter XII at Section 1220.1 applies Subchapter B policies to all Federal agencies. 36 CFR § 1220.10(b) requires federal agencies to establish and maintain a records management program that complies with NARA regulations. In this case, the NARA regulation is a six-year retention. NARA GRS 1.1 Item 011. Unauthorized destruction of records includes accidental destruction. 36 CFR § 1230.3(b).

4