IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>JACKY LYNN MCCOMBER, )<br>  formerly known as )<br>  Jacky Lynn Kimmel, )<br>)<br>  *Defendant.*   )<br>_____) | CRIM. NO. ELH-21-036 |

### ORDER

Having considered the factual points and legal authorities in the defendant's motion to compel discovery pursuant to *United States v. Brady*, 373 U.S. 83, 87 (1963) (ECF 100); the government's opposition (ECF 119); the defendant's reply (ECF 138); the defense request for a Rule 17(c) subpoena (ECF 118); the evidence and argument presented at the two-day motions hearing held on August 29th and 30th, 2022 (ECF 153; ECF 154); the defendants' supplemental filing of August 31, 2022 (ECF 155), as well as the parties' submissions at ECF 180, ECF 181, ECF 195, and ECF 196, and for the reasons stated at the hearing, and based upon the record herein, it is, this 15th day of November, 2022, hereby

ORDERED that the defendant's motion asking this Court "to appoint a neutral party with TSSC [Top Secret Security Classification Authority] and NSA experience to conduct a physical review of the Ironbridge contract files, to interview the custodian of those records, and to catalogue the records that do exist," and to "appoint a Magistrate Judge of the United States District Court to oversee the logistics of this process," ECF 100-1 at 18, is hereby DENIED. And, it is further

ORDERED that the NSA shall undertake to perform a reasonable additional search for, and shall produce any additional, previously undisclosed records responsive to the following categories of documents that the parties have identified in their respective filings (including the table at ECF 119-1) and not already in the current possession of the defense,[1] but which could potentially contain exculpatory material or evidence that would be subject to production under Fed. R. Crim. P. 16(a)(1)(E) (collectively, the "Document Requests"):

1. Any Quality Assurance Surveillance Plan or calculation of expected hours for the Program Manager (PM) labor category for the Ironbridge Contract contained in the NSA's Office of Contracting Pre-solicitation File related to the Ironbridge Contract;

2. Any correspondence between InfoTeK and NSA personnel from March 1, 2016, through September 30, 2017, relating to the Configuration Management Plan for the Ironbridge Contract, including any revised plan or updates to the existing plan;

3. Any correspondence between InfoTeK and NSA personnel from January 1, 2012, through December 31, 2012, relating to the issue of whether PM support related to the Ironbridge Contract could be provided, in whole or in part, from an off-site location;

---

[1] In the defendant's reply to the government's opposition to the *Brady* motion, defense counsel indicated that although the defendant had been permitted during the course of the Ironbridge Contract to maintain a copy of "most (or perhaps even almost all) of the 'deliverables' or 'work product'" that the defense was seeking, the defendant had not retained these documents. ECF 138 at 3. Defense counsel also said, *id.* at 6: "The accused, McComber, isn't bluffing. She doesn't have the documents."

4. Any Contracting Officer Representative ("COR") Appointment Letters for Jonathan Smith, Kristin Mair, Don Pugh, Regina Shirley, and Jason Clark relating to the Ironbridge Contract;

5. Any Contractor Annual Performance Evaluations relating to InfoTeK's performance on the Ironbridge Contract for Fiscal Years 2011 through 2018, whether in draft or final form;

6. Any Project Management Plan updates for the Ironbridge Contract submitted by InFoTeK personnel from March 1, 2016, through September 30, 2017;

7. A Trade-off study analysis produced by InfoTeK and delivered to the NSA between March 20, 2017, and June 20, 2017, as well as any meeting notes from the same time period relating to the Trade-off study;

8. Any resumes submitted to the government for review and potential placement of individuals as workers on the Ironbridge Contract from March 1, 2016, through September 30, 2017, as well as emails from March 1, 2016 through September 30, 2017, between the NSA and defendant McComber regarding the discussion of individuals whose resumes were submitted by her for consideration of that individual to work on the Ironbridge Contract, and discussions of security processing and onboarding/offboarding of new staff on the Ironbridge Contract;

9. Any monthly funding proposals or spend plans for the Ironbridge Contract submitted by InfoTeK personnel to the NSA from March 1, 2016, through September 30, 2017;

10. Any invoice approvals and related communications for the monthly invoices submitted by InfoTeK to the NSA that form the basis for the charges set forth in Counts 1 through 19 of the Superseding Indictment;

11. Any emails or chats from March 1, 2016, through September 30, 2017, between the NSA and defendant Jacky McComber regarding the addition of subcontractor CVS to the Ironbridge Contract;

12. Any Status Reports submitted by InfoTeK personnel to the NSA relating to work performed on the Ironbridge Contract from March 1, 2016, through September 30, 2017;

13. Any travel estimates submitted by InfoTeK personnel to the NSA relating to the Ironbridge Contract from March 1, 2016, through September 30, 2017;

14. Any high-side emails and chats (to the extent not already produced) from September 22, 2016, through December 20, 2016, between the Contracting Officer and Jason Clarke, and then to Jacky McComber, disallowing her to perform technical coding work on the Ironbridge Contract;

15. In addition to ¶ 4, *supra*, any Contracting Officer Appointment Letters related to the Ironbridge Contract;

16. The slide deck from the July 2017 Management Review, and any meeting notes relating to the July 2017 Management Review meeting;

17. Any unofficial documentation relating to the approving or disallowing specific administrative tasks that could be performed off-site by the PM on the Ironbridge Contract;

18. Any emails from 2017 or 2018 from or on behalf of T. Starr Smith pertaining to the disapproval and demand for removal of PM hours on invoices

submitted by InfoTeK or the criteria applied in the NSA's determination of hours that were not approved and subsequently removed from the InfoTeK invoices and that were subsequently either paid or not paid by NSA; and

19. Any correspondence to or from Tiffany Starr Smith in or about December 2017 relating to identifying a desk at NSA secured facilities for the Ironbridge PM.

It is further ORDERED that the government shall produce responsive documents to the extent available and, beginning November 11, 2022, the government shall provide an update to the Court, every two weeks, concerning NSA's search and production of records related to the Document Requests.

And, based on the government's assertion that it anticipates completion of production by on or about January 11, 2023 (*see* ECF 196 at 3), it is ORDERED that the documents subject to this Order shall be produced by the government by January 11, 2023.

*Ellen L. Hollander*
THE HON. ELLEN L. HOLLANDER
United States District Court Judge

5