**United States District Court**
**District Of Maryland**

Chambers of
**Ellen Lipton Hollander**
District Court Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-0742

November 23, 2022

LETTER TO COUNSEL

Re:   *United States of America v. Jacky Lynn McComber*
       Criminal No.:  ELH-21-036

Dear Counsel:

As you know, the Court held a hearing on Monday, November 14, 2022, at which argument was presented with respect to "The Government's Motion *In Limine* And Supplemental Additional Brief Concerning The Defendant's 'Acceptance' Theory." ECF 171 (the "Motion").[1]  The Motion is supported by several exhibits.  The opposition of defendant Jacky McComber is at ECF 173, also with exhibits.  And, the government replied (ECF 186) and submitted additional exhibits.[2]

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). A motion in limine helps to streamline a case, because such a motion allows "a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States,* 35 Fed. Ct. 63, 65-66 (1996) (citation omitted).  To be sure, rulings on admissibility assist counsel in preparation for trial.  However, such rulings are "preliminary," and are made in the discretion of the court. *Luce*, 713 F.2d at 1239. When the evidence is actually offered at trial, the trial court may opt to change its ruling.  *Id*.

Here, the government challenges defendant's pursuit of two proposed defenses, which are related.  According to the government, the proposed defenses are factually and legally invalid. The government also relies, *inter alia*, on Rules 401 and 403 of the Federal Rules of Evidence ("F.R.E.").

---

[1] The defendant previously moved to dismiss the Indictment (ECF 35, ECF 38), based on the theory of acceptance.  The government addressed the acceptance theory in its opposition to that motion.  *See* ECF 41.  The defendant later withdrew the motion to dismiss.  ECF 116.

[2] The motion hearing was one of several held in this case.  Because the parties are very familiar with the respective allegations, I need not repeat them here.  Instead, I incorporate here the factual summary set forth in my Amended Memorandum Opinion of November 10, 2022 (ECF 194).

First, the government challenges a defense arising from the government's payment of ITK's monthly invoices.  ECF 171 at 2.  The government notes that the invoices "appeared valid on their face" and were "certified" by ITK as true and correct.  However, the defense claims that the government paid the invoices because of its "acceptance" of services.  The government explains that, according to the defense, acceptance constitutes "a finding" or "affirmation" by the government that the appropriate government official "thoroughly reviewed all of the underlying work" and was "satisfied" that the services were provided, as invoiced.  ECF 171 at 2.  The government insists that acceptance is not a valid defense.  *Id.*

Second, the government challenges defendant's reliance on or attempt to introduce at trial the email letter (ECF 35-1) sent to the defendant on November 16, 2021, by Garrett Bosshardt, who is described by the government as "a low-level government contractor."  ECF 171 at 2.  The email concerned the Ironbridge Contract, at issue here, and was sent many months after the indictment.  *Id.* at 2-3.  In his email, Bosshardt stated, in part, that the Ironbridge Contract "is hereby finalized . . . ."  Bosshardt also said: "Our records indicate that the subject contract is complete and no further supplies or services are due . . . therefore the Government considers it complete."[3]  According to the government, the defendant improperly contends that the Bosshardt email constitutes a finding by the government that defendant worked all of the hours for which she billed the government in regard to her services as Program Manager between April 2016 and October 2017.

Defendant disagrees with the government's characterization of her acceptance argument.  She asserts that the "actual foundation" of her argument is that NSOC, the NSA customer, "accepted services," not invoices.  ECF 173 at 1.  She maintains that she has never claimed that "acceptance" amounts to an affirmation concerning the accuracy of the invoices.  *Id.*

It appears to the Court, however, that this is precisely what defendant contends.  She wants the jury to enter from the proverbial back door, and to conclude from the fact of "acceptance" of services that she must have worked the hours that she billed.  But, this approach is not necessarily improper.

The central issue in this case is whether the defendant worked the hours she claimed, and for which she billed the government.  According to the government, the defendant inflated the hours that she worked as Program Manager on the Ironbridge Contract.  In other words, the government claims that defendant did not expend the time for which she billed.  McComber vigorously disputes the contention.

From the defense perspective, the services that the defendant performed under the Ironbridge Contract are essentially intertwined with the amount of time it supposedly took defendant to do the work.  She seeks to prove that she did the work because that would support an inference that she must have expended the time that she claimed in order to do the work.

---

[3] As the government puts it, Bosshardt was "*asking* whether there was an impediment to closing out the Ironbridge Contract . . . ."  ECF 171 at 2 (emphasis added).  The email speaks for itself.  But, the text of the email does not contain such an inquiry.

It is a fact that the government repeatedly paid the invoices submitted by ITK.  Indeed, both sides undoubtedly will introduce evidence to that effect.  But, according to the defendant, before the government pays an invoice, government personnel are supposedly required to make an assessment of some sort to establish that payment is warranted.  As I see it, McComber is entitled to introduce evidence to show how NSA determines whether to pay an invoice.  And, she is entitled to introduce evidence establishing that NSOC, the customer, was apparently satisfied that the services were provided, and for that reason authorized the payment of the invoices.

As I said in an earlier opinion (ECF 194), this argument leaves "a rather wide berth."  *Id.* at 52.  The government contends that it paid the invoices as a result of defendant's fraud, which was undetected when payment was made.  NSA's failure to detect fraud at the time of payment of an invoice certainly does not preclude the government from lodging a challenge to the veracity of the invoices.  And, if the jury credits the claim of fraud, the alleged acceptance is of no significance.  But, contrary to the government's position, the claim of fraud does not foreclose defendant's right to present evidence of acceptance.

The government would have the Court believe that the matter of acceptance of services is not relevant, because the government was defrauded in paying the invoices.  That is too narrow a view.  It is for the jury to decide whether defendant expended the time she claimed.  And, in this regard, the jury is entitled to consider evidence that, when the work was performed, the government followed a protocol before approving payment.  And, the government's protocol could support an inference that defendant must have expended the hours that she claimed.

A hypothetical illustration, not factually identical to the circumstances present here, illustrates the distinct theories of the parties, either of which could prove true.

Assume a government contractor agreed to deliver three large stacks of test tubes to the government, with each stack holding 48 tubes, and each tube filled with a particular substance.  Further, the parties agreed to an estimate of twenty hours for the contractor to perform the task.  The three stacks are delivered, wrapped together, and visually inspected, to the extent feasible.  Therefore, the invoice is paid.  Because the items were delivered and the invoice was paid, one could infer that the contractor provided the proper number of test tubes, filled with the proper substance, and expended the time that had been contemplated to fill the test tubes and wrap the stacks.

But, at a later time, when the customer reached the bottom rack of test tubes, which were not fully visible on delivery, it became apparent that the testing substance was not in all of the tubes, and a few test tubes were missing.  Upon discovery of the condition, the government claimed that the contractor was not entitled to payment, and could not have spent the time claimed on the invoice.  Worse yet, the government claimed that the conduct was purposeful.  And, the government maintained that it could not have known any of these facts when it paid the invoice.

In such a scenario, the government is entitled to prove what occurred, and to attempt to establish that the conduct was deliberate.  However, the contractor is entitled to dispute the contention.  To do so, the contractor can attempt to show that, on delivery, the government checked the product and was satisfied the product was provided.  From these facts, the contractor at a trial could ask the jury to infer that the time billed was the time spent.

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 402, "[r]elevant evidence is admissible" unless rendered inadmissible pursuant to some other particular legal provision, and "[i]rrelevant evidence is not admissible."

However, under Rule 403, the court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice," or admission of the evidence would confuse the issues, mislead the jury, cause undue delay, waste time, or "needlessly" involve the presentation of "cumulative evidence." *See also United States v. Gondres-Medrano*, 3 F.4th 708, 719 (4th Cir. 2021). "Evidence is unfairly prejudicial when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 124 (4th Cir. 2011) (ellipsis in original).

With regard to the email written by Bosshardt, the government vigorously contends that the email was sent by mistake; Bosshardt had no authority to bind the government; he was unaware of the charges against the defendant; and the letter is of no legal significance. It presented witnesses at a hearing who testified that the letter was merely formulaic and sent in error, as McComber herself recognized at that time. The government can certainly introduce evidence to this effect. But, defendant sees the letter differently. It supports her theory of the case. And, it is for the jury to decide whose version is correct, what weight to attach to the Bosshardt email, and whether to credit the explanation of a mistake.

In my view, the probative value of the Bosshardt letter is not "substantially outweighed" by the identified dangers. Nor is this a situation in which "'there is a genuine risk that the emotions of a jury will be excited to irrational behavior,'" such that the "'risk is disproportionate to the probative value'" of the proposed evidence. *United States v. Hassan*, 742 F.3d 104, 132 (4th Cir. 2014) (citation omitted). To be sure, the government will have to call additional witnesses to explain what transpired. But, such additional evidence will not unduly lengthen the trial.

As noted, rulings on motions in limine are tentative, and subject to revision, depending on the presentation of evidence at trial and other factors that may develop. But, as of now, in the current posture of the case, the Motion (ECF 171) is denied.

Despite the informal nature of this letter, it is an Order of the Court and shall be docketed as such.

Sincerely,

Ellen L. Hollander
United States District Judge

4