

# CLARKE F. AHLERS, P.C.

ATTORNEY-AT-LAW

ATHOLTON SQUARE
10450 SHAKER DRIVE, SUITE 111
COLUMBIA, MARYLAND 21046

TELEPHONE: 410.740.1444
FACSIMILE: 410.740.0048

23 December 2022

Hon. Ellen L. Hollander
U.S. District Court Judge
U.S. Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

  Re: *United States v. Jacky McComber*, Crim. No. ELH-21-036.

Dear Judge Hollander:

  Mr. Gray seeks additional time to respond to Defendant's *Motion in Limine*. ECF # 208. **The defense takes no position and leaves the decision about the request to the discretion of the Court.**

  I write to correct certain mistakes in the letter because the mistakes may influence the Court's important decision on the *Motion in Limine*, not the request for extension. The mistakes begin in the first sentence.

  Mr. Gray references Exhibit 1 as the "standard time records" of InfoTeK. His statement is not accurate. The Court may note that Exhibit 1 is labeled: <u>People – Timesheet for Jacky L. McComber (4/24/2016 – 5/7/2016)</u>. The Defendant was known as Jacky Kimmel during calendar years 2016 and 2017. Ms. Kimmel changed her last name after marrying Sean McComber on April 20, 2019. Also, Exhibit 1 refers to a two-week period crossing over two months: April of 2016 and May of 2016.

  In fact, Mr. Gray's Exhibit 1 is part of a document created by the defense team on or about August 20, 2020, for the purpose of comparing McComber's hours as Program Manager to the records of all other Ironbridge Program Managers, most particularly Raynett Colston.[1] It remains relevant to the trial because the defense can prove that for 411 work days over a 19-month period for both Program Managers (Colston and McComber), Colston billed 2,568 hours. McComber

---

[1] In ECF #78 at page 10, the government quotes Colston as saying that she had little to do as Program Manager and implied that after leaving InfoTeK she learned that McComber was rarely at NSA. In ECF #119 at 15, the government quotes Jason Doyle as saying that McComber wasn't at NSA as much as Colston had been.

1

billed 2603.5 hours. The difference between the time Colston spent at NSA (according to the confirm system) was one hour and 2 seconds more than McComber spent at NSA (according to the confirm system). In short, McComber performed the Program Manager tasks in approximately the same amount of time; McComber was at NSA for the same amount of time.

Contrary to Mr. Gray's representations, the records in Exhibit 1 were *never* used to generate the invoices. First, Exhibit 1 didn't exist at the time of the invoices. A different time record was used. An example of a time record used to create an invoice during the period of the Indictment is appended hereto as defense Exhibit 1.

The government then states that Dwayne Preston and Craig Plunkett "can both testify about how these records were generated and used to produce ITK's monthly bills to the NSA. Indeed, *any* ITK employee can testify about how this process worked that they used to enter and record their time." ECF #208 at 1. This statement contradicts the government's prior position at ECF #169 at 3-4. "[T]his [calling a witness to testify about the company's Unanet records] will clearly require expert testimony…".

The government asserts that it may call *any* InfoTeK witness to testify about how Unanet timekeeping records were generated and used to produce ITK's monthly bills to the NSA, but the defense may not. This prompted the defense *Motion in Limine*.

Mr. Gray's letter is also inaccurate in the second paragraph. Mr. Gray describes "perfectly clear time card records that were produced by all of ITK's employees on a daily basis." This statement is misleading in multiple ways. First, ITK employees used an internet based timekeeping system called Unanet. What employees were supposed to do is log into the Unanet program at the end of a workday, enter the hours the employee worked, and log out. The employees never produced the timecard records; the employees simply encoded data into a computer program.

Only Unanet system administrators could make, cause to come into existence, or "produce" timecard records like Defense Exhibit 1 appended to this letter. Both Dwayne Preston and Craig Plunkett were Unanet system administrators.

Even business records kept in the normal course of business need to be accurate to be introduced into evidence. Fed.R.Evid. 803(6)(E). The government knows that Dwayne Preston admitted to surreptitiously breaking into the Unanet records system and changing data in the system.[2] So, there are circumstances indicating lack of trustworthiness, which would ordinarily bar introduction of the records under FRE 803(6). *See SEC v. Hughes Capital Corp.*, 124 F.3d 449 (3rd Cir. 1997) (holding altered check stubs not trustworthy); *Wi-Lan, Inc. v. Sharp Electronics Corp.*, 992 F.3d 1366 (Fed. Cir. 2021) (holding altered computer records not trustworthy).

The problem is compounded in this case because the government has indicated an intention to introduce an "Investigative Spreadsheet" created by Agent Hazenstab, presumably under FRE 1006. The government has never produced any explanation of the records that Agent Hazenstab

---

[2] A short version of Preston's criminal misconduct in changing Unanet data is already a part of the *Motion in Limine*. ECF #203 at 3, as well as Exhibits ECF# 203-1 and 203-2.

used to create Column I ("Company Billed") of her "investigative spreadsheet." Upon information and belief, Agent Hazenstab requested InfoTeK timecard records from Craig Plunkett on September 14, 2017. Craig Plunkett produced an Excel report of the timecard records and provided that report to Agent Hazenstab on September 20, 2017. The Excel report was *not* a Unanet record. The Excel report was a computer-generated report in Microsoft Excel based upon records that Plunkett entered into Excel, presumably for the convenience of Hazenstab. The Excel report provided to Hazenstab by Plunkett was unique to Hazenstab's request. It was not a Unanet record. It was not a monthly timekeeping record of InfoTeK. It was never produced for any InfoTeK purpose, including invoice. It was a response to an email request of Hazenstab.

The significance of this sequence of events is that Plunkett's Excel report to Hazenstab was created *after* Preston's breach and corruption of the timekeeping records but prior to Preston's admission of misconduct. This means that Plunkett used corrupt data. This means that Hazenstab was inadvertently provided with inaccurate records.[3] At trial, the defense is prepared to impeach Hazenstab's "investigative spreadsheet" if the version provided to the defense is admitted over objection by the Court.

Thank you in advance for your attention to this matter.

Respectfully submitted,

/s/
_____
Clarke F. Ahlers, Esq.

---

[3] On October 3, 2017, less than two weeks after Plunkett provided the Excel report to Agent Hazenstab, Hazenstab interviewed McComber. McComber told Hazenstab that InfoTeK had uncovered a breach of the Unanet system and had filed a "John Doe" lawsuit to determine the owner of the IP address of the hacker/offender. Hazenstab never showed Unanet records to McComber during the interview. Hazenstab showed her "investigative spreadsheet" (presumably in progress) to McComber. The information provided to McComber by Hazenstab during the October 3, 2017, interview was: (1) inaccurate *ab initio* because Preston had corrupted the InfoTeK timekeeping records *before* Plunkett recovered them; (2) recovered by Plunkett and re-encoded into an Excel format; (3) received by Hazenstab and re-encoded into an "investigation spreadsheet" at Column I and then shown to McComber as the basis for interrogation. Please appreciate that Hazenstab confronted McComber with an investigative spreadsheet as though the data in the investigative spreadsheet was fact when it was not. McComber's response to this muddled and provably inaccurate computer record is the basis for Count 20.

3