**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Jefferson M. Gray*
*Assistant United States Attorney & Deputy Appellate Chief*
*Jefferson.M.Gray@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4915
MAIN: 410-209-4800
FAX: 410-962-3091

January 29, 2024

**BY CM/ECF**

The Hon. Ellen L. Hollander
U.S. District Court Judge
U.S. Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

      Re:  *United States v. Jacky McComber*
            Crim. No. ELH-21-036
            The Government's Responses and Objections to
            The Defense's Proposed Draft Discovery Order
            (ECF # 414)

Dear Judge Hollander:

    I am attaching a copy of the Defendant's Proposed Draft Discovery Order (ECF # 414) that was submitted to the Court late Friday afternoon, with our responses and objections shown in red.

                                Very Truly Yours,

                                Jefferson M. Gray

cc: All counsel (by ECF)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> **JACKY LYNN MCCOMBER** <br><br> Defendant. | Case No. 1:21-cr-0036-ELH |

**PROPOSED SENTENCING DISCOVERY ORDER**

Upon consideration of the evidence and argument presented at the discovery conference on December 21, 2023 (ECF No. 396) and in accordance with the status and scheduling conferences held in this matter on January 5, 2024 (ECF No. 403), January 9, 2024 (ECF No. 405) and January 23, 2024 (ECF No. 413) [this ECF number is slightly off: the correct number is ECF 412] and the Court's rulings on the record therein, the Court ORDERS as follows:

1) Document Search & Production

   a. "Emails": As ordered by the Court on January 5, 2024, Tr. 17 at 13-14, ECF No. 410, NSA shall expedite the production of the documents that were identified by defense counsel on a list they provided to Ms. Peacy (NSA OIG) and Mr. Pyne (NSA OGC) during defense counsel's on-site document review at NSA on January 22, 2024.[1]

---

[1] On January 9, 2024, the Court further directed that: "I need somebody at NSA who understands the gravity of this and who is going to put this at the front of the line. I just can't – I cannot tolerate any delay." Tr. 42:15-17, ECF No. 406. These documents have been referred to as emails during the

1

**Our Response:** The government is confident that this request (including its Footnote No. 1) will be mooted by the production of the emails the defense has requested very shortly. Moreover, while your Honor did make the statement defense counsel quotes in a moment of understandable impatience with the apparently never-ending prolongation of these proceedings during the January 9th hearing, that statement cannot stand alone, but must be considered in the context of the Court's earlier statement during the hearing on December 21, 2023 that:

```
        I thought the Government made a Herculean effort
to comply with my Order.  I don't know if my Order
was right.  I did what I did because that's what I
thought was right or I wouldn't have done it.
Probably a different judge, maybe somebody would have
given the defense more and maybe somebody would have
cut it in half or not at all.  But this was, Mr.
Ahlers beat that drum repeatedly, and that is not a
criticism, I'm just say[ing], he was incredibly
persistent that's the result of that persistence was
reflected in my ruling at ECF-198 and other rulings.
. . . I felt everybody did try really their best, as
far as I could tell[,] to meet it.
```

Tr. 12/21/23 (ECF # 400) at 103.

In addition, in a sentence just past the quotation cited by defense counsel, your Honor qualified its comment about the need for the NSA to promote the defense's discovery requests to the very head of the line for classification review and redaction by stressing that this *only* applied with respect to the defense's requests "If they're reasonable." And the government strongly submits that defense counsel's requests are not only duplicative of past productions, but are frivolous, abusive, and irresponsible and unreasonable given the substantial burden they impose on the NSA and the minimal or wholly non-existent probative value these requests have with regard to the loss determination issue in this case. We anticipate producing further evidence to that effect at the hearing on Tuesday.

Also, we do wish to note that with regard to the emails, Ms. Weeks was in error at the status conference last Tuesday afternoon when she disputed government counsel's statement that she and Ms. Katzen had reviewed "high side" emails when they were out at the NSA the previous day (Monday, January 22nd). Ms. Weeks instead insisted that she and Ms. Katzen were reviewing "unclassified" emails. Again, this reflects the defense team's (perhaps somewhat understandable) continuing misunderstanding about the

---

various discovery-related conferences, but what defense counsel was provided to review on January 22, 2024, was a mix of Ms. McComber's U//FOUO NSA emails and Lync messages.

2

character of the "UNCLASSIFIED – FOR OFFICIAL USE ONLY" markings. As government counsel and Ms. Peacy from the NSA's Office of Inspector General (NSA-OIG) have previously explained, documents are stamped UFOUO so they can circulate readily within the NSA itself without having to go through a full-blown classification review. If they are to be released outside the agency, however, then that full classification review must be done, with the attendant delay that usually causes. And UFOUO emails and documents are commonly sent via "high-side" computer terminals at the NSA. Thus, when NSA personnel refer to "high-side" emails, that encompasses both emails carrying a classification stamp and emails marked UFOUO.

    b. <u>Materials reviewed and redacted but not produced before trial</u>: At the January 23, 2024 hearing, defense counsel relayed that during their on-site document review at NSA, they were informed that NSA is in possession of a set of documents that had been collected, reviewed, and redacted for production prior to trial (hereinafter the "previously redacted materials"), but those redacted documents were never produced to the defense.

**Our Response:** The defense's draft text above assumes that additional documents were received by the government and never produced, but this has not yet been established. To start with, Ms. Peacy disagrees with Ms. Weeks's claim that she made a statement to this effect last Monday. Rather, she has indicated she actually stated that she wasn't sure whether all of the redacted emails sent over in January 2023 were produced to the defense, but that she would cross-check the emails requested by Ms. Katzen and Ms. Weeks on January 22, 2024 to determine whether they had already been reviewed and redacted as part of the searches by the various identified NSA personnel using the search terms or topics in the fall of 2022. [The need for that, of course, is now mooted by the imminent production of these emails.]

    It is not surprising that Ms. Peacy would be uncertain on this point, because once the materials are sent by the NSA to the U.S. Attorney's Office, she has no further involvement in the process. Moreover, as defense counsel certainly knows, I stated expressly at the hearing on January 23rd that I had not yet had an opportunity to determine (a) what were the last materials produced to us by the NSA prior to trial, (b) when that occurred, and (c) whether and when these were produced to the defense. I am currently reviewing our records and I am reasonably

3

confident that I will be able to supply a definitive answer to this question by the time of Tuesday's hearing.

> NSA shall expeditiously produce those materials to the defense, along with information about the date by which NSA completed its review and redaction of those materials in January 2023. This set of materials should be segregated from other materials to be produced to the defense.

Again, I am reasonably confident that we will be in a position to resolve this question by the time of the hearing on Tuesday. If I am able to supply anything to defense counsel and to your Honor addressing this issue by Monday afternoon, I will certainly do so.

    c. Other Materials:

        i. As ordered by the Court on January 9, 2024, ECF No. 406, Tr. 71:16-18, NSA shall undertake a search for the following materials:

            1. "[A]ny reports, status reports, or other reports relating to [Ms. McComber's] duties and responsibilities as program manager" and "any reports that involve work [Ms. McComber] did," ECF No. 406, Tr. 58:25-59:5;

**Our Response:** While the language the defense counsel included here does consist of direct quotes from your Honor's 's remarks the January 9th hearing, I am not sure that it was necessarily the Court's intention that this specific language be used in the Order. Obviously, the Court was speaking not from a prepared draft text, but rather in an effort to find some way of dealing with the language of Request No. 2 that defense counsel presented in its letter of the previous day (January 4, 2024). Your Honor had just described the language of this request as follows:

```
Ms. Weeks, let me go back to number two, this is a big one, if
you ask me, the one that's the most problematic for me.  I'm
trying to narrow this because I think it's overbroad, and it
```

```
doesn't focus enough on Ms. McComber, so I need your help to
direct NSA and Mr. Gray to work on exactly what?
```

```
Tr. 1/9/23 (ECF # 406) at 58; see also id. at 59 ("I would agree
that any reports that involve work she did should be produced.
I just don't know that these are the right characterizations.")
```

We of course recognize that by just quoting your Honor directly, the defense may have thought that it was reducing the likelihood of any objection and thereby facilitating issuance of an agreed order. But what the defense has missed is that – as your Honor's own comments reflect – the most important thing here is giving the NSA's personnel some functional guidance as to what it should be searching for in order to facilitate their task. Yet defense counsel have wholly failed to do that, instead punting on even trying to tackle this problem.

The simple truth is that the defendant is in the best position to know what reports she produced "that involve work she did". **It is not a big imposition to ask her to identify what those are: if they were a product that she generated regularly, she should know what they were; what they related to; what they were titled; and some of the key words and terms that would typically appear in them.** Instead, defense counsel has produced (in shown in the government's submission ECF # 411-2) a mind-boggling list of dozens of search terms that were generated by Ms. Weeks, apparently using basically the same approach she would employ in trying to draft up the most comprehensive possible request for production of documents under Fed. R. Civ. P. 34 in a civil litigation.

But there are two key distinctions that the defense is missing here. First, in a civil litigation, when seeking an adversary's internal documents, it is necessary to draft requests using multiple terms and extremely broad language **precisely because counsel may not know how the opposing party's documents were identified or what phraseology they included. Here, as a result of your Honor's narrowing of the defense's request No. 2, the defense is purportedly trying to obtain copies of documents that *were produced by the defendant herself* as part of her regular duties over a 19-month period of time and with which, accordingly, she should be intimately familiar.** And, of course, given that these documents were purportedly prepared off-site and are unclassified, it is extremely hard to understand why the defendant has no ability (and apparently never had any, even back when InfoTeK was a going concern and she had criminal counsel) to generate these records herself.

The obvious conclusion, of course, is that defense counsel and the defendant are incapable of producing or specifically identifying the documents they are

5

purportedly requesting because the defendant in fact did not do any such work. It is striking that whenever defense counsel (or the defendant) are pressed on matters like this, their (and her) response has been to try and evade the question by responding (as Ms. Weeks did on January 9th), "I don't think the burden is on Ms. McComber here to this extent." Tr. 1/9/2024 (ECF # 405) at 80. As your Honor properly responded: "it's not a matter of burden . . . let's not play games."[2]

Indeed, far from "burdening" the defendant, given that she has now been convicted at trial and is facing sentencing, it would in fact be to the defendant's **benefit** to do everything possible to assist the NSA in identifying evidence of what defense counsel have called her "work product." Instead, both defense counsel and the defendant either resist doing that, or they simply cannot do it because there is no such work product to identify. Indeed, strikingly, defense counsel previously asserted in its supplemental Rule 29 motion that "Ironbridge was a specific type of government contract that *does not result in tangible work product aside from monthly status reports . . . .*" ECF # 359 at 2 (emphasis added).

And what are these "monthly status reports"? As we know and have discussed extensively during the court proceedings, Government Exhibit (GX) 24(e)(1) establishes that on April 4, 2017, the defendant stated in an email that "Jon

---

[2] During her cross-examination, the defendant tried to use the same dodge when pressed to name witnesses who could testify that she worked the number of hours she claimed (Tr. 2/8/23 [ECF # 303] at 159):

Q. So your testimony is that you regularly worked far more than eight hours a day on the Ironbridge contract, but there's no witness available to confirm what you're saying because you did it privately, correct?

A. I did not say that.

Q. Okay. So who is available who can explain to this jury that you were regularly working 14 hours a day on the Ironbridge contract? Who can say that?

A. There are people who could say it who witnessed me.

Q. Who?

A. Sir, you're asking me to take the burden to prove to you that I worked and that's a violation of my constitutional rights.

[Smith] had us stop doing these and now the COS [Contracting Officer Specialist] is demanding them. Ugh!" Moreover, although the request at that time was for a report covering the past six months, the defendant's language – together with the fact that Smith left his position at NSOC supervising Ironbridge in the fall of 2016, Tr. 1/31/23 (ECF # 298) at 8-9 – indicates that the decision to suspend the report requirement that the defendant described must presumably have been in effect well in advance of Smith's departure, very likely dating back to the summer or spring of 2016, when the defendant reassumed her position as Ironbridge program manager.[3]

The second thing the defense is missing here is that criminal discovery is much more limited than civil discovery, and fishing expeditions are not permitted. *See, e.g., United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (an evidentiary subpoena is "unreasonable and oppressive" unless the requesting party demonstrates, *inter alia*, that "it is not intended as a general 'fishing expedition'"); *United States v. Crosland*, 821 F. Supp. 1123, 1129 (E.D. Va. 1993) (noting that a proper trial subpoena cannot be phrased in terms "unmistakable reminiscent of a

---

[3] Raynette Colston did recall doing weekly and monthly reports when she was the Ironbridge PM, but she was briskly dismissive about the amount of time they each required from her – largely because she said most of the work on these was done by "her technical people":

> When a contract is originally started, there are certain documents that the government says you, as the prime contractor, has to provide them. The only document that I provide, there was a monthly report that had to be done and a weekly report. *And that information, I gathered from my technical people.* I put together a report and provided that to the government. So it was a weekly and monthly property [probably "report"], and that was of what we were doing technically for the contract.
>
> Q. And how much of your time would that take?
>
> A. Weekly, maybe an hour. I just gather the information. Monthly, I just had to put it together. So I would say no more than an hour or so for each of those.

Tr. 1/31/23 (ECF # 298) at 69 (emphasis added). So, even when the reports *were* required back in Colston's day, they took only 4-5 hours a month of her time as PM.

7

discovery request," because "Without the requirement that documents be specifically identified by the trial subpoena, such subpoenas could be utilized for the type of discovery-oriented document requests decried as 'fishing expedition[s],' and expressly prohibited by the Supreme Court"), *citing Nixon*, 418 U.S. at 700 (setting forth a three-part test for the validity of an evidentiary subpoena, of which the third prong is "specificity"), and *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951). *See also United States v. Caro,* 597 F.3d 608, 620 (4th Cir. 2010); *United States v. Trevino,* 89 F.3d 187, 192 (4th Cir. 1996) ("The adversary system does not permit either party to 'engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents.'"), *quoting United States v. Zolin,* 491 U.S. 554, 571 (1989); *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir. 1980) ("Courts must be careful that [the evidentiary subpoenas provided by] rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16."); *United States v. Indivor, Inc.*, 1010 WL 616167, at *3-*4 (W.D. Va. Feb. 10, 2020) (noting that to comply with *Nixon*'s specificity requirement, "The defendants are therefore required to provide details about when the documents were created, their contents, and their authors," and therefore quashing their subpoenas; where "The defendants' broad requests could amount to thousands of pages of responsive material that the defendants hope will reveal evidence to support the formation of a defense," "The defendants' motion could be denied on this basis alone."); *United States v. Noriega,* 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("if the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.")

    Here, in other remarks during the January 9th hearing that are not acknowledged by the defense, your Honor stated that "much of this strikes me as incredibly tangential to the hope of finding something that will support your claim that she did more than the Government is giving her credit for. And now we've been on this *incredible fishing expedition*. . . ." Tr. 1/9/23 (ECF # 406) at 22-23 (emphasis added). Given that this is the case, and that the defense has repeatedly failed to identify specific documents that are readily identifiable and producible – as well as that defense counsel has wholly failed to address why the defendant cannot produce these documents (if they in fact ever existed) from InfoTek itself – it is now plainly time to bring defendant McComber's fishing expedition (which has now been going on since the spring of 2022) to an end, and to bring this case to a final resolution at sentencing.

8

2. "[D]ocuments relating to hiring and staffing of Ironbridge," ECF No. 406, Tr. 73:13, as requested in ECF No. 401, item 3 ("including but not limited to candidate resumes and communications about interviewing, onboarding, and training new hires");

**Our Response:** The government first wishes to preserve its objection to this request on the grounds that the defendant's own extensive testimony at trial (Tr. 2/7/23 [ECF # 302] at 205-223) and the Government's cross-examination of her with regard to these matters (Tr. 2/8/23 [ECF # 303] at 74-84), along with the evidence presented by the government itself with respect to the amount of personnel turnover on the Ironbridge contract during her tenure as PM in 2016-17 (GX 44) has adequately addressed these matters for the purposes of the sentencing proceeding in this case. Compelling the government to conduct extensive and time-consuming searches for the underlying documents such as emails and resumes' relating to these transactions is unreasonable in light of the testimony taken and the evidence introduced at trial. Second, if resumes' were collected by ITK off-site and then transmitted to the NSA, and if low-side emails were used to advance the candidacies of these individuals, then the defendant has equal if not easier access to these materials herself, and she should be required to undertake the effort involved in identifying and producing these. Indeed, she has already had months in which she could have done so.

3. "Communications or materials that pertain to the project management review in July of 2017," ECF No. 406, Tr. 71:22-23. Specific custodians and search related to the project management review request were provided by defense counsel to the government on January 11, 2024 and January 18, 2024. *See* ECF No. 411-2.

**Our Response:** Again, we submit that this matter has already been adequately addressed at trial.

9

> ii. Except as otherwise specified for ¶1(c)(i)(3) (*see* request 4 in ECF No. 401), the materials to be searched are the emails and personal drives of the following custodians: Jacky Kimmel; Kristin Mair; Jonathan Smith; Jason Doyle; Regina Shirley; Tiffany Starr (Bye) Smith; Donald Pugh; Megan Collins; Cherril Guinther; Rob Bryant; and Jason Clark. The Court understands that defense counsel has provided revised search terms to facilitate NSA's review, *see* ECF No. 411-2; NSA shall apply those terms in conducting the search and document the searches conducted, including any deviations from the search terms provided by defense counsel.

See previous objections. In particular, the extraordinarily lengthy list of search terms and custodians that have been identified by the defense in this case fly in the face of this Court's repeated insistence that the replacement defense counsel will not be afforded a "do-over" in this case. Tr. 1/9/24 (ECF # 406) at 22 ("The whole scope of this has very much felt to me all along like we were starting over, and I couldn't be more clear about the fact that we are not having a do-over."). As this Court further said back on August 21st:

```
     I think that there is an effort to, basically,
unravel what's already been accomplished.  And I just
-- I can't be a party to that.  You have an issue
with my rules, you take them to the Fourth Circuit.
I made rulings in this case that are not going to be
revisited.  That is not my job.  My job is to bring
this case to closure, and I intend to do it.
```

Tr. 8/21/23 (ECF # 357) at 20.

2) <u>January 30, 2024 Status Conference</u>

    a. As reflected at ECF No. 413, the parties shall convene for an in-person status conference on January 30, 2024 at 10:00 AM. During that conference, NSA shall make available personnel who are knowledgeable about the NSA's search, review, and redaction of documents in connection with this matter.

    b. Those personnel shall be prepared to provide the following information to the Court:

        i. An approximate date by which NSA can expeditiously produce the emails identified by defense counsel during their on-site review at NSA on January 22, 2024;

        ii. The status of NSA's efforts to search the above-defined documents as described above and the approximate time it will need to identify whether any responsive documents exist that have not previously been produced to the defense and to produce those documents; and

        iii. Information about 1) the date by which the previously redacted materials referenced in ¶1(b) were ready for production to the defense in January 2023; 2) when a complete set of those materials will be produced to the defense.

**Our Response:** With regard to item iii, please see our objections at pages 3-4 above. Beyond that, it is clear that this portion of its proposed order – which the defense does not even try to establish was authorized by the Court during the hearing on January 23rd – is merely an attempt to develop some means of

11

undercutting the defense's withdrawal of its discovery demands prior to trial on January 10th, 2023, and by that means to generate some appellate issue that can be used to attack the defendant's trial convictions, rather than addressing the amount of the loss at sentencing.

It is further ORDERED that the government and NSA shall produce any responsive documents identified as a result of the search detailed in this Order as expeditiously as possible or will inform the Court and defense that it has completed its search for documents related to this Order with no results.

THE HON. ELLEN L. HOLLANDER
United States District Court Judge