IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

JACKY LYNN MCCOMBER

*Defendant.*

Criminal No. ELH-21-036

## MEMORANDUM OPINION

This Memorandum Opinion resolves a dispute between defendant Jacky Lynn McComber and the government concerning defendant's request to seal portions of her sentencing submissions.

Defendant is the owner, President, and Chief Executive Officer of InfoTeK Corporation ("ITK"), a software development company that provided classified technical services to the National Security Agency ("NSA") pursuant to a contract known as the Ironbridge Contract (the "Contract"). On May 26, 2022, a grand jury in the District of Maryland returned a Superseding Indictment charging defendant with nineteen counts of submitting a false claim to the NSA, in violation of 18 U.S.C. § 287, and one count of making false statements under oath during an interview in October 2017, conducted by agents of the NSA's Office of the Inspector General ("OIG"), in violation of 18 U.S.C. 1001(a)(2). ECF 97.[1]

The case is rooted in defendant's work as Senior Program Manager for the Contract from March 2016 through September 2017. At trial, the government presented evidence that defendant billed the NSA for work that she did not perform and that defendant lied under oath about her false

---

[1] The original Indictment was issued on February 25, 2021. ECF 1.

billing when she was interviewed by OIG agents.  The jury convicted defendant of all twenty counts.  ECF 279.

Sentencing is scheduled for June 26, 2024, June 27, 2024, and, if necessary, June 28, 2024.[2] ECF 450.  Both parties have filed voluminous sentencing memoranda with numerous exhibits.  *See* ECF 431 to ECF 431-13 (government's submission); ECF 433 to ECF 433-13 (collectively, defendant's "Sentencing Memorandum"); ECF 435 (defendant's objections to the government's loss calculations and other proposed sentencing enhancements) ("Defense Objections"); *see also* ECF 286; ECF 288; ECF 289; ECF 290; ECF 311.

Defendant initially moved to file the entire Sentencing Memorandum under seal. ECF 432 ("Motion" or "Motion to Seal").  She asserts that sealing is warranted because the Sentencing Memorandum "includes . . . highly sensitive and personal information relating to [defendant's] history and characteristics" and the "mental and physical health" of her children.  *Id.* at 1. However, defendant does not seek to seal the Defense Objections.  In a later submission (ECF 456), discussed *infra*, defendant proposes certain redactions instead of wholesale sealing.

The government largely opposes defendant's sealing requests.  ECF 437; *see also* ECF 460.  According to the government, in order to reply to the Sentencing Memorandum and to prepare for the sentencing hearing, it "need[s] be free to share the claims and allegations in the defendant's filing with other individuals who are in a position to dispute them."  ECF 437 at 2. Moreover, the government argues that defendant's broad sealing request is "particularly inappropriate" because "[t]he public clearly has a right to know . . . any significant considerations that play into" the sentence imposed by the Court.  *Id.*  And, the government contends that, by

---

[2] In November 2023, the Court held three days of evidentiary sentencing hearings.  *See* ECF 377, ECF 378, ECF 379.

requesting sealing of the Sentencing Memorandum, "defense counsel are asking th[e] Court to enter what amounts to a gag order preventing the government from conducting its own due diligence" regarding certain claims in the Sentencing Memorandum.  ECF 460 at 2.

No reply was filed by the defendant within the time provided by Local Rule 207.1.

A hearing is not necessary to resolve the Motion.  Local Rule 105.6.  For the reasons that follow, I shall grant the Motion, in part.

## I.      Background[3]

As noted, defendant initially moved to seal her Sentencing Memorandum (ECF 433) in its entirety.  *See* ECF 432.  By Order of April 22, 2024, the Court preliminarily granted defendant's sealing request.  ECF 436.[4]

Thereafter, on April 22, 2024, the government filed an objection to the Order granting the Motion.  *See* ECF 437.  In its submission, the government asserted, *inter alia*, that sealing would interfere with the public's right of access to the information.  *Id.* at 2.  And, the government claimed that sealing would prevent it from "shar[ing] the claims and allegations in the [Sentencing Memorandum] with other individuals who are in a position to dispute them."  *Id.*

Accordingly, by Order of April 23, 2024 (ECF 438), the Court directed defendant to file "a memorandum justifying her position [in the Motion] that the Sentencing Memorandum should be sealed in its entirety."  *Id.* at 2.  In the alternative, the Court asked defendant to submit proposed redactions of her materials for filing on the public docket.  *Id.* at 2–3.  And, the Court set a due date for the government's "response."  *Id.* at 3.

---

[3] Throughout this Memorandum Opinion, I cite to the electronic pagination, and not to page numbers imprinted on particular documents.

[4] In this Court's experience, both defense counsel *and* the government routinely file motions to seal sentencing memoranda, and the motions are generally granted.

On May 7, 2024, defendant filed, under seal, correspondence in response to the Court's Order of April 23, 2024.  ECF 456 ("Sealing Memorandum").  In her submission, defendant sets forth her proposal "to file a redacted Sentencing Memorandum and its exhibits on the public docket," and the grounds for the request.  *Id.* at 4.  Defendant also submitted two exhibits: a transcript of a telephone conference held by the Court on April 30, 2024 (ECF 452; ECF 456-2), and a version of the Sentencing Memorandum that contains the proposed redactions.  ECF 456-3.

The government filed correspondence in response on May 16, 2024.  ECF 460 ("Response").  The Response is accompanied by a proposed order.  ECF 461.  In the Response, the government opposes many of defendant's proposed redactions, reiterates its contentions regarding the right of public access, and argues that sealing would prevent the government from effectively contesting various claims in the Sentencing Memorandum that the government believes are bogus.

## II.    The Contentions

### A.

The parties present competing proposals with respect to the sealing of the Sentencing Memorandum and its exhibits.

In the Sealing Memorandum (ECF 456), defendant abandons her earlier request in the Motion (ECF 432) for the sealing of the Sentencing Memorandum in its entirety.  *See* ECF 456 at 1.  Instead, defendant proposes to file on the public docket a version of the Sentencing Memorandum from which certain "sensitive, private, and protected information" has been redacted.  *Id.*

According to defendant, her proposed redactions concern five "categories of information": "[h]ighly sensitive personal information relating to [defendant's] history and characteristics;

4

"[h]ighly sensitive third-party information, including hearsay accounts of particularized behavior by [defendant's former husband] Bobby Kimmel"; "[d]irect quotes and citation to information from [defendant's] PSR," which is itself sealed; "[a]ll information relating to [defendant's] minor children, including information relating to the drowning death of [defendant's] stepson"; and "[p]rotected health information of [defendant] and her children." *Id.* at 5.

In addition, defendant proposes to seal nine of the twelve exhibits filed in support of the Sentencing Memorandum: a "Social History Report" describing defendant's personal history and characteristics, prepared by Elizabeth Sandman, a Licensed Clinical Social Worker employed by the Office of the Federal Public Defender for the District of Maryland (ECF 433-2, "Social History Report" or "Report"); twenty-two character letters submitted by defendant's supporters (ECF 433-3); an obituary of defendant's stepson (ECF 433-4); an "Incident Report" concerning the death of defendant's stepson (ECF 433-5); an excerpt of an OIG interview of Dwayne Preston, the former Chief Financial Officer of ITK (ECF 433-6); mental health treatment records for one of defendant's minor children (ECF 433-7); mental health treatment records for two of defendant's other minor children (ECF 433-8); certain objections by the government to the Presentence Report ("PSR") (ECF 433-9); and a work-related psychological evaluation of defendant performed by the NSA in 2018 (ECF 433-10, "Psychological Evaluation"). ECF 456 at 5.

Defendant does not propose to seal exhibits that do not contain personal or sensitive information. In particular, defendant does not seek to seal media reports about her prosecution (ECF 433-11); a "Statistical Information Packet" published by the United States Sentencing Commission (ECF 433-12); and a chart titled "Sentence Type for Sentenced Individuals" (ECF 433-13).

According to defendant, the materials she proposes to seal are "ancillary" to the Court's sentencing decision.  *See* ECF 456 at 3.  Indeed, defendant understands "the Court [to have] advised that the disputed information about [defendant's] history and characteristics in the presentence report will not play a significant role in its determination of the sentence."  *Id.* at 4. In this regard, defendant cites the transcript of a telephone conference that occurred on May 7, 2024 (ECF 456-2), in which the Court stated that disputes about defendant's personal history are "far afield from the issues that are the difficult ones . . . in this case, which are the guideline[s] enhancement[s] and the loss amount."  *Id.* at 11–12.

In its Response (ECF 460), the government argues that defendant intends to use her personal history as a central factor in the Court's sentencing decision.  *See id.* at 5–6.  In the government's view, the "extensive information" presented by defendant about her personal history, "much of which [the government] believe[s] is factually dubious . . . is . . . being offered in a transparent attempt to stir the Court's sympathies for the defendant . . . ."  *Id.* at 5.

The government surmises that the "Court is clearly very unlikely to get down to the defense's desired [probationary] sentence . . . without a massive downward variance or departure . . . ."  *Id.* at 5–6.  Thus, it suggests that defendant seeks to present herself as a "woman who is deserving of this Court's sympathy and leniency" because of her claim of an unfortunate personal history and, in using that approach, she "seeks to bridge that very wide gap" between the probationary sentence that she has requested and the sentence that, in the government's view, is warranted and consistent with the Guidelines.  *Id.* at 6.

The government impugns the veracity and relevance of much of the information presented by defendant in her Sentencing Memorandum.  In the government's view, the defendant has attempted to "obscure" and "to shield" her "bid for a massive downward variance or departure"—

which the government regards as "palpably unreasonable"—"from effective review or challenge

by the government." *Id.* And, the prosecution posits that, "if the defense *really* believes that all

of this [personal] information is . . . 'completely ancillary' to the 'core issues,'" as she has said,

then she should have no problem "disavowing it . . . ." *Id.* at 6 n.2 (emphasis in ECF 460) (citation

omitted).

To ensure that it is able to rebut the factual representations subject to the proposed

redactions, the government asks the Court to enter an order providing "that the Government may

share any information or factual claims that the defendant has submitted to the Court with any

witness that [sic] the Government in good faith believes may have relevant information relating to

the veracity of those claims, while at the same time instructing those witnesses that they must

maintain the confidentiality of this information and may not further disclose it without the prior

affirmative approval from this Court, on pain of being held in contempt of Court." *Id.* at 8.[5] In

addition, the government asks the Court to permit either party, "without directly quoting from the

PSR," to "summarize or rephrase factual claims made by the defendant in the PSR (whether in its

final written submission or in oral remarks at the sentencing hearing) that have been relied upon

by the defense in its sentencing materials in the course of addressing, contesting, rebutting or

defending those claims." *Id.*[6]

---

[5] The government does not provide authority addressing the power of the Court to hold in contempt an individual who is not directly subject to an Order of the Court.

[6] Under Local Rule 213, the public has no right of access to the Presentence Report, which "is a confidential internal court document . . . ." And, except as authorized by Fed. R. Crim. P. 32, Local Rule 213, or the Court, the probation department may not disclose its content.

The government also presents several objections to certain of defendant's proposed redactions to the Sentencing Memorandum. *See id.* at 8–11.  I shall review these objections in the order the government presents them.

With respect to defendant's proposal to redact certain information about defendant's children, *see* ECF 456-3 at 3, the government states: "If the defendant wishes to rely on this information at sentencing, [there is] no reason why it should be redacted."  ECF 460 at 8. According to the government, "[m]uch of this information would already be publicly known to the defendant's family, friends, neighbors, fellow school parents, and co-workers and employees." *Id.* However, the government concedes that replacing "the names of [defendant's] children with initials . . . would be consistent with Fed. R. Crim. Pr. 49.1." *Id.* (typeface altered).  That Rule provides, in part, that, "in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party or nonparty making the filing may include only . . . the minor's initials . . . ." Fed. R. Crim. Pr. 49.1(a)(3).

The government next objects to the sealing of "the three full paragraphs from the top of" ECF 456-3 at 5 "through the middle of" ECF 456-3 at 6, which concern the alleged emotional mistreatment of defendant by her former husband, Robert Kimmel.  ECF 460 at 9.  Without citation to authority, the government suggests that, if the paragraphs are sealed, the government will be unable to solicit a response to them from Mr. Kimmel.  *Id.*; *see also id.* at 10.  And, according to the government, a prohibition against showing the material to Mr. Kimmel would "prevent the government from effectively addressing [defendant's] claims" of mistreatment.  *Id.* at 9.  The government posits that unless it is permitted to share the paragraphs with Mr. Kimmel, the paragraphs "should be stricken from the defense's filing and disregarded by the Court."  *Id.*

The government also objects to the sealing of the "bottom paragraphs of" ECF 456-3 at 6 "and the top of" ECF 456-3 at 7, which describe the tragic circumstances of the death of defendant's young stepson.  ECF 460 at 10.  According to the government, "these [paragraphs] simply detail matters of public record."  *Id.*  And, "[a]s for the second full paragraph on" ECF 456-3 at 7, which concerns the "reactions" of Bobby Kimmel, Paul Rooney,[7] and Dwayne Preston to the death of defendant's stepson, the government asserts that it is "of no moment to the sentencing."  ECF 460 at 10.  Therefore, the governments asks that this paragraph "be stricken from the record and disregarded."  *Id.*

The proposed redactions at pages 7–8 of ECF 456-3 pertain to information about the mental health of one of defendant's minor children.  The government has "no objection to redacting the single sentence that bridges pages" 7 and 8.  ECF 460 at 10.  And, the government agrees that defendant's minor child "could be referred to by her initials."  *Id.*  But, the government objects to the redaction of the remainder of the material on pages 7 and 8 of ECF 456-3.  In the government's view, redaction of this material is not appropriate because it "is information of a kind that typically appears in publicly filed sentencing memoranda."  ECF 460 at 10.[8]  In addition, the government requests that a statement regarding the minor child's relationship with her father, Bobby Kimmel, "be stricken unless Mr. Kimmel is provided an opportunity to respond to it."  *Id.*

---

[7] Paul Rooney was President of ITK from February 2014 to February 2015.  ECF 429-1 at 28 n.27 (citing ECF 298 at 140, 151).

[8] The government's reference to what is "typical" with respect to the filing of sentencing memoranda is at odds with this judge's personal experience.  Generally, as noted, both the defense *and* the government submit sentencing memoranda under seal, without objection.  For one thing, if the Court were to seal only the sentencing memoranda of cooperators, it would be obvious when a particular defendant has cooperated, thereby jeopardizing the safety of the cooperator.  Indeed, some defendants have asked the Court to release their presentence reports and/or sentencing memoranda just to prove to fellow inmates that they did not cooperate.  And, because of the personal information that is often included in a sentencing memorandum, sealing is customary.

The proposed redacted material at pages 8–11 of ECF 456-3 favorably describes defendant's relationship with her children, her reputation in the community, and her performance in her current job.  *See* ECF 460 at 10.  It also contains quotations from several of the character letters submitted in support of the Sentencing Memorandum.  *See* ECF 456-3 at 8–9.  According to the government, the information subject to the proposed redactions "is typical sentencing memoranda material" that should be published on the public docket.  ECF 460 at 10.  However, the government agrees that "[i]nitials can be used to refer to" the authors of cited character letters, "if the defense really considers that necessary."  *Id.*

The proposed redacted material on page 12 of ECF 456-3 addresses the government's assertion that defendant has lied about having been abused as a child and mistreated by her former husband, Bobby Kimmel.  In the government's view, "[t]his is simply advocacy by defense counsel," and it "would be particularly inappropriate to throw a veil over what exactly defense counsel contend[s] in regard to these matters."  ECF 460 at 10–11.

The final proposed redaction to the text of the Sentencing Memorandum occurs on page 14 of ECF 456-3.  The redacted text is a statement by defendant's husband, Sean McComber, describing the hardship that defendant's incarceration would cause to their family.  *See id.*  With regard to this proposed redaction, the government states, ECF 460 at 11:

> Although defense counsel presumably thinks it would be an invasion of Mr. McComber's privacy to allow this information to appear unredacted, these paragraphs are a core part of the defense team's [request] . . . for a very substantial downward departure and a non-incarceration sentence.  None of these statements are particularly surprising; they simply reflect the consequences that all spouses and children suffer if a defendant is sentenced to a term of incarceration.  Moreover, defendants who have argued for reduced sentences based on extraordinary family circumstances or their physical condition typically lay out what those circumstances are, albeit sometimes with redactions of the names of family

members, as any review of appellate cases discussing such requests with readily demonstrate.[9]

The fourth part of the government's argument in the Response concerns defendant's request "to 'seal in full' all but the last three . . . of [her] twelve exhibits." ECF 460 at 11 (quoting ECF 456 at 5). The government agrees to the proposed sealing of the OIG interview of Dwayne Preston (ECF 433-6); the mental health records of defendant's minor children (ECF 433-7; ECF 433-8); and the government's objections to the PSR (ECF 433-9). *See* ECF 460 at 14. But, the government objects at least in part to the proposed sealing of the remaining exhibits to the Sentencing Memorandum.

First, the government objects to defendant's request to seal in full the Social History Report (ECF 433-2). ECF 460 at 11. According to the government, the Report "is less a report that pretends to any kind of objectivity than it is an advocacy document," which "reflects a fairly studious determination to avoid being exposed to, or considering, any information adverse to the defendant." *Id.* Nevertheless, the government agrees that it is appropriate to seal the portions of the Social History Report that describe defendant's relationship with her former husband. *Id.*; *see* ECF 433-2 at 9–15.

Second, the government objects to the proposed sealing of ten of defendant's character letters, ECF 460 at 13. These are the letters submitted by Dawn Brehony (ECF 433-3 at 8–9), T.J. Crews (ECF 433-3 at 19); Richard Dean (ECF 433-3 at 20); Michelle Green (ECF 433-3 at 22–23); Patrick Jensen (ECF 433-3 at 29–30); Sheila Jordan-Weeks (ECF 433-3 at 31); David Sciamarelli (ECF 433-3 at 37); Richard Shane (ECF 433-3 at 38); Laura Smith (ECF 433-3 at 39); and Lauren Starr-Wolfe (ECF 433-3 at 40). However, the government consents to the sealing of

---

[9] The government does not provide a citation to any of the "appellate cases" it suggests are relevant to the Court's assessment of the proposed redaction. *See* ECF 460 at 11.

the remaining "12 of the defendant's 22 character letters." ECF 460 at 13.   These are the submissions of Amanda Baker (ECF 433-3 at 3–5); Wendy Baur (ECF 433-3 at 6–7); Laura Buell (ECF 433-3 at 10–15); Tracy Concha (ECF 433-3 at 16–18); Linda Freeman (ECF 433-3 at 21); Angela Hauschel (ECF 433-3 at 24–25); Teresa Hoffman (ECF 433-3 at 26); Nancy Hoffman (ECF 433-3 at 27–28); Sean McComber (ECF 433-3 at 32–34); John Nowlin (ECF 433-3 at 35–36); Bernadette Ward (ECF 433-3 at 41–43); and Maureen Ward (ECF 433-3 at 44–45). According to the government, it is appropriate to seal these letters because they contain potentially prejudicial information concerning third parties.  ECF 460 at 12.

Third, the government objects to the proposed sealing of the obituary of defendant's stepson (ECF 433-4) and the Incident Report (ECF 433-5) describing the circumstances of his death.  According to the government, sealing would be inappropriate because "[d]efense counsel and many of [defendant's] friends who submitted character letters have treated [the death of defendant's stepson] as an important part of the defendant's story."  ECF 460 at 13.  Moreover, the government suggests that sealing would be inappropriate because both documents are "publicly available on the internet."  *Id.*

Finally, the government objects to the proposed sealing of defendant's Psychological Evaluation (ECF 433-10).  ECF 460 at 14.  Citing *United States v. Kravetz*, 706 F.3d 47, 63 (1st Cir. 2013), the government asserts that "psychological records on which a defendant seeks to rely in connection with a request for a lower sentence should not be sealed."  ECF 460 at 14.  According to the government, "because this report . . . contains much information that will be useful to the Court in connection with th[e] sentencing, both parties should be free to discuss it and quote directly from it in their public filings . . . ."  *Id.*

**B.**

I address briefly defense counsel's recent request to file "a short reply on or before Wednesday, June 5." ECF 466 at 3. As noted, the government filed its Response on May 16, 2024. ECF 460. Therefore, a reply, if any, was due by May 30, 2024. *See* Local Rule 207.1; Local Rule 105.2(a).

On May 29, 2024, I directed my assistant to contact defense counsel, via email, to determine whether the defense intended to submit a reply. *See* ECF 466 at 1. Defense counsel responded by email, stating that the Court's Order of April 23, 2024 (ECF 438) did not provide for a reply, but the defense would be "happy to submit" a reply by June 5, 2024. *Id.* at 2. Defense counsel also stated: "[I]f the Court is willing to allow it, we will submit a short reply on or before Wednesday, June 5." *Id.* at 3.

Local Rule 105.2(a), made applicable to criminal cases by Local Rule 207.1, provides a party with the right to file a reply within fourteen days after service of an opposition. The opposition was filed on May 16, 2024. *See* ECF 460. To be sure, I did not specify a date for a reply in my Order of April 23, 2024, requesting further briefing. *See* ECF 438.[10] But, it goes

---

[10] In an email of May 29, 2024 (ECF 466 at 4), the government claimed that further briefing by defendant would be "superfluous." It also objected to further briefing by defendant on the ground that any additional submission by defendant would amount to a surreply, not a reply, and a surreply is disfavored. I disagree with the government's contention that an additional submission by defendant would constitute a surreply.

In my Order of April 23, 2024 (ECF 438), I asked the defendant to submit a memorandum in support of her original Motion to Seal (ECF 432). And, I asked the government to submit a response. I chose the word "response" because I could not know if the response would amount to an opposition.

The defendant's submission of May 7, 2024 (ECF 456) is either a supplement in support of the original Motion (ECF 432) or, arguably, a new motion. Regardless, the government's Response (ECF 460) is, in fact, largely an opposition.

without saying that the Local Rules provide default rules of scheduling and procedure that apply unless the Court modifies them.

The Court cannot delay issuing its ruling regarding defendant's proposed redactions to the sentencing materials.  As the government has made clear, the preparation of its next sentencing submission depends, in part, on the Court's resolution of the sealing dispute.  And, the government's forthcoming submission is critical to the Court's preparation for the upcoming sentencing.

### III.   Legal Standard

"The right of public access [to judicial records and documents] derives from two independent sources: the First Amendment and the common law." *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (citing *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)).  "For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record.'"  *In re Application*, 707 F.3d at 290.  "[D]ocuments filed with [a] court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights."  *Id.*  Thus, "judicially authored or created documents are judicial records," as are documents "filed with the objective of obtaining judicial action or relief."  *Id.*  On the other hand, "'the mere filing of a paper or document with [a] court is insufficient to render that paper a judicial document subject to the right of public access.'"  *Id.* at 290 n. 6 (citation omitted).

---

Notably, dates for the parties' submissions were extended, at their request.  ECF 453; ECF 454.  Any subsequent descriptions of the submissions (*see, e.g.*, ECF 453-1) do not alter their character.

In short, defendant, as the movant, had the right to reply to the Response, within the time provided by the rules.  Such a submission would not constitute a surreply.

The common law presumes that the public and the press have a qualified right to inspect all judicial records and documents. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014); *Wash. Post*, 386 F.3d at 575; *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("[H]istorically both civil and criminal trials have been presumptively open.").  However, the common law right of access may be abrogated in "unusual circumstances," where "countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *accord In re Knight*, 743 F.2d 231, 235 (4th Cir. 1984); *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 376 (4th Cir. 2021).

Therefore, "[a]t common law, a district judge must weigh the competing interests of the public's access to judicial proceedings and the interests of the individuals in keeping the information private and of the government in ensuring integrity in its processes."  *Gonzalez*, 985 F.3d at 376 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978)); *see United States v. Harris*, 890 F.3d 480, 491–92 (4th Cir. 2018)).  "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'"  *Wash. Post*, 386 F.3d at 575 (quoting *In re Knight*, 743 F.2d at 235); *see Gonzalez*, 985 F.3d at 376.

"Ultimately, under the common law the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court . . . .'"  *Wash. Post*, 386 F.3d at 575 (quoting *Nixon*, 435 U.S. at 598–99) (alteration in *Wash. Post*).  The Fourth Circuit "therefore review[s] a

district court's decision concerning common law access for abuse of discretion." *Wash. Post*, 386 F.3d at 575.

The common law right of access is complemented by a "more rigorous" right of access under the First Amendment, which applies to a narrower class of documents, but is more demanding of public disclosure. *Rushford*, 846 F.2d at 253. "In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Wash. Post*, 386 F.3d at 575 (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). In *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986), the Fourth Circuit "h[e]ld that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearing themselves." And, in *Rushford*, 846 F.2d at 253, the Court concluded "that the more rigorous First Amendment standard . . . also appl[ies] to documents filed in connection with a summary judgment motion in a civil case." But, in *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296 (table), 1995 WL 541623, at *3 (4th Cir. 1995), the Court "conclude[d] that the First Amendment guarantee of access should not," in general, "extend[] to documents filed in connection with a motion to dismiss," because such documents were not generally "considered by the court" and "do not serve as a substitute for [evidence presented at] a trial." *Id.*

Although the "public's right to access documents under the First Amendment is narrower in scope" than the public's right under the common law, it is "stronger in force." *United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020). Therefore, a "sealing involving judicial records and documents can be accomplished without violating First Amendment rights only if (1) [sealing] serves a compelling interest; (2) there is a substantial probability that, in the absence of [sealing], that compelling interest would be harmed; and (3) there are no alternatives to [sealing] that would

adequately protect that compelling interest." *Gonzalez*, 985 F.3d at 376–77 (citations and internal quotation marks omitted); *see also In re Application*, 707 F.3d at 290; *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). The Fourth Circuit "review[s] a district court's decision concerning access under the First Amendment de novo." *Wash. Post*, 386 F.3d at 576 (citing *In re State-Record Co., Inc.*, 917 F.2d 124, 127 (4th Cir. 1990)).

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Wash. Post*, 386 F.3d at 576. "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because '[o]nly then can it accurately weigh the competing interests at stake.'" *Id.* (quoting *Stone*, 855 F.2d at 181). And, as to procedure, "the district court must (1) give the public adequate notice of a request to seal and a reasonable opportunity to challenge it, (2) consider less drastic alternatives to sealing, and (3) if it decides to seal, state the reasons, supported by specific findings, behind its decision and the reasons for rejecting alternatives to sealing." *Gonzalez*, 985 F.3d at 376 (citing *In re Knight*, 743 F.2d at 235); *see also Wash. Post*, 386 F.3d at 576.

A sentencing memorandum is a judicial record that is presumptively accessible by the public. *See Doe*, 962 F.3d at 146; *Harris*, 890 F.3d at 492; *United States v. Bas*, JKB-17-0324, 2022 WL 1270841, at *2 (D. Md. Apr. 28, 2022). "The party seeking to overcome the presumption" in favor of public access "bears the burden of showing" that denial of access is consistent with the common law and the First Amendment. *Rushford*, 846 F.2d at 253. However, there is some uncertainty in the Fourth Circuit about whether a request to seal a party's sentencing

memorandum is evaluated under the common law standard or, instead, the more searching First Amendment standard.

In *Harris*, 890 F.3d 480, the Fourth Circuit evaluated the defendant's request to seal his sentencing memorandum under the common law standard. *Id.* at 492 (beginning analysis by noting that "'the Supreme Court [has] recognized a common law right to inspect and copy judicial records and documents'") (quoting *In re Knight*, 743 F.2d at 235). And, citing *Harris*, Judge Bredar stated in *Bas*, 2022 WL 1270841, at *2, that "sentencing memoranda are subject to the more limited presumption of access arising from the common law right to inspect and copy judicial record and documents." (Citations and internal quotation marks omitted); *see also Kravetz*, 706 F.3d at 57 ("[S]entencing memoranda are judicial documents subject to the common law presumption of public access.").

Nevertheless, in *Doe*, 962 F.3d at 146, the Fourth Circuit suggested that materials filed in connection with a sentencing are properly evaluated under the First Amendment standard, not the common law standard. In *Doe*, the district court declined to seal an order that made evident the defendant's status as a government cooperator. *Id.* at 142. On appeal, the Fourth Circuit noted that its "precedent largely supports applying the public's First Amendment right of access to the district court's order." *Id.* at 146. And, citing *In re Wash. Post*, 807 F.2d at 390, the *Doe* Court stated, 962 F.3d at 146: "We have held that the First Amendment right applies to sentencings and plea hearings, as well as to documents filed in connection with those proceedings." However, the Court declined to "conclusively decide th[e] issue." *Doe*, 962 F.3d at 146. Instead, it "assume[d] without deciding that the First Amendment applie[d]" to the district court's order, and concluded that neither the common law nor the First Amendment precluded sealing the order. *Id.*

In contrast to a sentencing memorandum, which is presumptively accessible by the public,

a presentence report is generally maintained under seal. Local Rule 213.1(a) provides:

> Unless the Court orders that a presentence report, supervised release report,
> violation report, probation record, or portion thereof be placed in the public record,
> such report or record is a confidential internal court document to which the public
> has no right of access. Except as otherwise authorized by Fed. R. Crim. P. 32, by
> this Rule, or otherwise by law, the probation department shall not, unless otherwise
> ordered by the Court, disclose to any person any such report or record.

With regard to the presumptive sealing of presentence reports, Standing Order 2015-02

explains, 1:00-mc-0308, ECF 60:

> In the great majority of cases the personal history in Part C [of the
> presentence report] does not factor into the judge's calculation of the guideline
> range. Rarely is such information germane to a determination of the defendant's
> offense level or criminal history category, or whether to depart from the guidelines.
> Part C information becomes relevant primarily when the judge is deciding (i) what
> sentence to impose within the guidelines range, (ii) whether to sentence outside the
> guideline range, and (iii) what special conditions of post-incarceration supervision
> (*e.g.*, drug testing) to impose.

### IV.  Discussion

### A.

I begin by evaluating defendant's proposed redactions to the Sentencing Memorandum

(ECF 433). I will then consider defendant's proposed redactions to the exhibits appended to the

Sentencing Memorandum. *See* ECF 433-2 to ECF 433-13. In conducting these evaluations, I shall

follow the example of the Fourth Circuit in *Doe*, 962 F.3d 139, and assume, without deciding, that

the more rigorous First Amendment standard applies to the information subject to the proposed

redactions.

For the reasons that follow, I conclude that, with some exceptions, the redactions to the

Sentencing Memorandum (ECF 433) are narrowly tailored to serve the compelling interests of

defendant's children and other third parties in the privacy of information concerning their health

and personal lives.  In addition, I conclude that certain redactions are appropriately applied to information that concerns defendant alone, because this information consists of "'details of . . . family history . . . history of diseases and treatments . . . [and] sexual orientation and practices'" that is of "peripheral" importance to the Court's sentencing decision.  *Kravetz*, 706 F.3d at 63 (quoting U.S. Congress, Office of Technology Assessment, Protecting Privacy in Computerized Medical Information, OTA–TCT–576 (Sept. 1993)) (hereinafter "OTA, Protecting Privacy in Computerized Medical Information").

In *Harris*, 890 F.3d 480, the Fourth Circuit recognized that redaction of presumptively public sentencing material may be appropriate when necessary to protect the privacy of third parties.  In particular, the Court "address[ed] whether the district court erred by refusing to restrict public access to [the defendant's] sentencing memorandum, which contained private and personal details about [the defendant] and his wife and child, as well as photographs."  *Id.* at 492.  The Court "recognized that an interest in protecting the physical and psychological well-being of individuals related to the litigation, including family members and particularly minors, may justify restricting access."  *Id.* (citing *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 607 (1982); *United States v. Cannon*, FDW-14-0087, 2015 WL 3751781, at *3 n.3 (W.D.N.C. June 16, 2015); *United States v. Fretz*, JCF-02-0067, 2012 WL 1655412, at *3 (E.D.N.C. May 10, 2012)).  The Court acknowledged that "the district court appropriately decided not to restrict public access to the entire sentencing memorandum," because "only select parts contained sensitive information."  *Harris*, 890 F.3d at 492.  But, the Court held that the district court "erred by not granting the less restrictive remedy of allowing [the defendant] to file a redacted version of the memorandum."  *Id.*

20

Consistent with *Harris*, at least two district courts in this Circuit have held that personal information concerning third parties may be appropriately redacted from sentencing memoranda. In *Fretz*, 2012 WL 1655412, the district court considered whether the First Amendment presumption of access precluded the sealing of a motion that "concern[ed], in large part, the psychological and physical well-being of [the defendant's] minor children."  *Id.* at *3.  The court concluded that "restricting access to much of the information contained in the [motion] [was] necessitated by the compelling and overwhelming government interest in the psychological health and welfare of the minor children identified in the motion."  *Id.*  The district court so concluded even though an unredacted version of the motion had been available on the docket "for a number of years."  *Id.* at *3 n.2.

In *Bas*, 2022 WL 1270841, Judge Bredar considered the defendant's "request that the Court permit him 'to file a redacted version of his sentencing memorandum to protect sensitive information.'"  *Id.* at *2 (quoting defendant's motion).  In particular, the defendant sought "to implement non-substantive redactions related to the names of his partner and minor children that appear in his Sentencing Memorandum and in attached exhibits."  *Id.* (citations omitted).  Citing *Harris*, 890 F.3d at 492, and *Fretz*, 2012 WL 1655412, at *3 n.2, Judge Bredar observed that "[o]ther courts have concluded that such redactions are appropriate, even where the filing to be redacted has been publicly available for a number of years prior to the request for redactions."  2022 WL 1270841 at *2.  Accordingly, Judge Bredar "permitted [the defendant] to file a redacted version of his Sentencing Memorandum that omit[ted] the names of his wife and children."  *Id.* at *3.

The "so-called third party exception" to the publicity of sentencing documents was also recognized in *United States v. Kilmartin*, JAW-14-0129, 2018 WL 1702403 (D. Me. Apr. 6, 2018),

a decision by a district court in Maine that the government urges the Court to treat as persuasive authority for unsealing.  *See* ECF 460 at 1.  In *Kilmartin*, 2018 WL 1702403, at *2, the defendant sought to seal sentencing materials that described his "psychological history and condition," which formed "a primary, though not exclusive, basis for his argument for leniency."  Referencing the principle that "the public has a right to know why the Court imposed the sentence that it did," the district court declined to grant wholesale sealing of the defendant's mental health records.  *Id.* at *3 (citation and internal quotation marks omitted).  But, the district court observed that, in *Kravetz*, 706 F.3d at 61–63, "the First Circuit distinguished between information and the defendant and information about third parties."  *Kilmartin*, 2018 WL 1702403, at *3.

In particular, in *Kravetz* the "First Circuit wrote that "'[t]hird party privacy interests . . . have been referred to as "a venerable common law exception to the presumption of access."'"  *Kilmartin*, 2018 WL 1702403, at *3 (quoting *Kravetz*, 706 F.3d at 62) (in turn quoting *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)).  Therefore, the district court stated that it was "willing to entertain a narrow request from [the defendant] if he contends that any of the submitted information is subject to being sealed under this narrow [third-party] exception to the presumption of public access."  *Kilmartin*, 2018 WL 1702403, at *3.

I am mindful that the courts in *Harris*, 890 F.3d 480, *Das*, 2022 WL 1270841, and *Kilmartin*, 2018 WL 1702403, reviewed the proposed restrictions according to the standard provided by the common law, not the standard provided by the First Amendment.  Nonetheless, I see no reason to treat the court's "interest in protecting the physical and psychological well-being of [third-parties], including family members and particularly minors," as anything less than compelling.  *Harris*, 890 F.3d at 492.

Further, I am satisfied that it is appropriate in some circumstances to seal information about a defendant's medical or personal history. The First Circuit has acknowledged that "[m]edical information is . . . 'universally presumed to be private, not public.'" *Kravetz*, 706 F.3d at 62 (quoting *In re Boston Herald*, 321 F.3d 174, 190 (1st Cir. 2003)). In *Kravetz*, the Court explained, 706 F.3d at 63: "Medical records, for example, frequently include 'the details of a person's family history, genetic testing, history of diseases and treatments, history of drug use, sexual orientation and practices, and testing for sexually transmitted diseases.'" (quoting OTA, Protecting Privacy in Computerized Medical Information). "In addition, '[s]ubjective remarks about a patient's demeanor, character, and mental state are sometimes part of the record." *Kravetz*, 706 F.3d at 63 (quoting OTA, Protecting Privacy in Computerized Medical Information) (alteration in *Kravetz*). According to the First Circuit, "[d]isclosure of this peripheral information may only serve to 'gratify private spite or promote public scandal.'" *Kravetz*, 706 F.3d at 63 (quoting *Nixon*, 435 U.S. 598). Therefore, the Court concluded that "redaction [is] a viable tool for separating this [peripheral] information from that which is necessary to the public's appreciation of the sentence imposed." *Kravetz*, 706 F.3d at 63.

As noted, I consider it appropriate to adopt many of the proposed redactions because they are, in my view, narrowly tailored to the Court's compelling interest in preserving the confidentiality of "painful and sometimes dis[turbing] details" about third parties, some of them minors. *Nixon*, 435 U.S. at 598 (citation and internal quotation marks omitted). In addition, I approve of certain redactions to information that concerns the defendant only, because this information contains "peripheral" details about defendant's medical or personal history that "'may only serve to 'gratify private spite or promote public scandal.'" *Kravetz*, 706 F.3d at 63 (quoting *Nixon*, 435 U.S. at 598). In contrast, I decline to adopt redactions to information about defendant

when, in my view, public disclosure of that information would not compromise defendant's privacy interests.

**B.**

With respect to the defense exhibits to the Sentencing Memorandum, the public has the same right of access as it has to the Sentencing Memorandum itself. Therefore, I shall assume, *arguendo*, that the request to seal the exhibits is governed by the First Amendment.

The defendant seeks to seal the Social History Report (ECF 433-2) in full. As noted, the government consents to the sealing of the portions of the Report that describe defendant's relationship with her former husband, Bobby Kimmel. ECF 460 at 11; *see* ECF 433-2 at 9–15. But, the government objects to the sealing of the remainder of the Report, which it characterizes as "an advocacy document masquerading as a psychological study." ECF 460 at 12.

In my view, it is necessary to redact substantial portions of the Report to protect the privacy of third parties, some of whom are minors. *See* ECF 433-2 at 3, 9–18. In addition, I consider it appropriate to redact those portions of the Report that describe sensitive aspects of defendant's medical and personal history. *See id.* at 3–4. I will also redact the photographs that appear in the Report. *See id.* at 3, 4, 11, 15. As I see it, these redactions do not conflict with the public's First Amendment right of access to sentencing materials.

I next consider whether it is appropriate to seal some or all of the 22 character letters appended to the Sentencing Memorandum. *See* ECF 433-3. As indicated, the government objects to the proposed sealing of ten letters, docketed at ECF 433-3 at 8–9; ECF 433-3 at 19; ECF 433-3 at 20; ECF 433-3 at 22–23; ECF 433-3 at 29–30; ECF 433-3 at 31; ECF 433-3 at 37; ECF 433-3 at 38; ECF 433-3 at 39; and ECF 433-3 at 40. In the government's view, sealing these letters is unnecessary because they "are devoid of derogatory information about third persons." ECF 460

at 13.  I agree that it is largely unnecessary to seal the cited letters.  However, three of the letters contain sensitive information about third persons.  *See* ECF 433-3 at 22–23; ECF 433-3 at 31; ECF 433-3 at 39.  Therefore, it is appropriate to redact this information, while otherwise preserving public access to the remainder of the three letters.

The government consents to the sealing of the twelve letters docketed at ECF 433-3 at 3–5; ECF 433-3 at 6–7; ECF 433-3 at 10–15; ECF 433-3 at 16–18; ECF 433-3 at 21; ECF 433-3 at 24–25; ECF 433-3 at 26; ECF 433-3 at 27–28; ECF 433-3 at 32–34; ECF 433-3 at 35–36; ECF 433-3 at 41–43; and ECF 433-3 at 44–45.  However, the government's consent to the sealing of these letters does not discharge the Court of its obligation to ensure that sealing is consistent with the First Amendment.  Having reviewed these letters, I agree that certain portions are appropriately redacted because they concern sensitive information about third parties.  Nonetheless, in my view, wholesale sealing of these letters is unnecessary, because they contain a significant amount of information that does not implicate the Court's interest in protecting the privacy of third persons.

The government objects to the sealing of the obituary of defendant's young stepson (ECF 433-4) and the Incident Report (ECF 433-5) describing the circumstances of his death.  The basis of the government's objection to the sealing of these documents is that they are already publicly available and pertain to "an important part of the defendant's story."  ECF 460 at 13.  Although the obituary appears to have been published on a publicly available webpage, it is not self-evident that the Incident Report is also publicly available.  In any event, the fact that a document has been publicly available is not *per se* a basis for declining to seal it.  *See Fretz*, 2012 WL 1655412, at *3 n.2 (ordering redactions to document even though the unredacted document had been available on the public docket "for a number of years"); *Bas*, 2022 WL 1270841 at *1–3 (ordering redactions to documents available to the public at terminals in the Clerk's office).  And, the obituary (ECF

433-4) and Incident Report (ECF 433-5) contain highly sensitive information concerning third persons.  Under these circumstances, I am satisfied that the obituary (ECF 433-4) and Incident Report (ECF 433-5) should not be filed on the public docket.

I consider, finally, the government's objection to the sealing of the NSA's 2018 Psychological Evaluation of defendant.  *See* ECF 433-10.  The government supports its objection by reference to the First Circuit's statement in *Kravetz*, 706 F.3d 47, that a defendant's "privacy interest in medical information is neither fundamental nor absolute, and can be waived or otherwise overcome by a variety of means." *Id.* at 63 (citations and internal quotation marks omitted); *see* ECF 460 at 14.  However, in *Kravetz*, 706 F.3d at 63, the First Circuit also acknowledged that medical information "peripheral" to a court's sentencing decision may be appropriately redacted when disclosure would "only serve to gratify private spite or promote public scandal."  (Citations and internal quotation marks omitted).

I readily conclude that the Psychological Evaluation merits sealing.  It describes in clinical detail the most intimate aspects of defendant's personal and medical history.  Although all information presented to a sentencing court is relevant to the court's decision, the information in the Psychological Evaluation is, under the circumstances attendant here, clearly "peripheral." *Kravetz*, 706 F.3d at 63.  Publishing this information on the public docket would likely do little to aid the public in its understanding of the sentence that is ultimately imposed.  But, it would make the Court an accessory in laying bare the most private aspects of defendant's life.  It is in exactly this circumstance that sealing is warranted.

## C.

The government has raised a hue and cry about the possibility that a seal on some or all of the Sentencing Memorandum might prevent it from gathering information to refute certain

statements in the PSR about defendant's personal history.  However, it appears to the Court that the supposed "gag order" that so alarms the government is, in fact, a prohibition of its own invention.  To be sure, Local Rule 213.1(a) prohibits the "probation department" from disclosing a presentence report "to any person."  But, that Rule says nothing of an *attorney's* entitlement to present information in a party's memorandum to a witness, in good faith, in order to investigate particular allegations or claims.  In any event, the government certainly could have asked the Court for authorization to make limited disclosures for the purpose of refuting the defendant's claims.[11]

Consistent with the government's request, the Court shall enter an Order providing "that the Government may share any information or factual claims that the defendant has submitted to the Court with any witness that the Government in good faith believes may have relevant information relating to the veracity of those claims, while at the same time instructing those witnesses that they must maintain the confidentiality of this information and may not further disclose it without the prior affirmative approval from this Court," and that a violation of the Order could lead to a finding of contempt of Court.  ECF 460 at 8; *see Quinter v. Volkswagen of America*, 676 F.2d 969, 972 (3d Cir. 1982) ("A person who is not a party to a proceeding may be held in contempt if he or she has actual knowledge of a court's order and either abets the defendant or is legally identified with him.").

In addition, the Court's Order shall provide that either party may "summarize or rephrase factual claims made by the defendant in the PSR (whether in its final written submission or in oral remarks at the sentencing hearing) that have been relied upon by the defense in its sentencing

---

[11] Indeed, the Court has spent hours of time on a matter that, in the Court's view, could have been resolved by counsel on their own.

materials in the course of addressing, contesting, rebutting or defending those claims." ECF 460 at 8.

### D.

Finally, I address two issues ancillary to the parties' disagreement.

First, the Court notes that the Clerk filed under seal the Order of April 22, 2024 (ECF 436), which preliminarily granted defendant's request to seal her sentencing materials. There is no basis for the sealing of this Order, and the Court shall direct the Clerk to unseal it.

Second, defendant's request (ECF 455) that the Court seal the Sealing Memorandum (ECF 456) remains pending. As I see it, the partial unsealing of the sentencing material obviates the need to unseal the Sealing Memorandum. Therefore, the Court shall grant defendant's request to seal the Sealing Memorandum.

### V.      Conclusion

For the foregoing reasons, I shall order the Sentencing Memorandum and its exhibits sealed in part and unsealed in part.

In particular, I shall order the Clerk to maintain under seal the obituary of defendant's stepson (ECF 433-4); the Incident Report (ECF 433-5); the excerpt of the OIG interview of Dwayne Preston (ECF 433-6); the mental health treatment records of defendant's minor children (ECF 433-7; ECF 433-8); the government's objections to the PSR (ECF 433-9); the Psychological Evaluation (ECF 433-10); and the Sealing Memorandum (ECF 456).

In addition, I shall order the Clerk to file, on the public docket, versions of the Sentencing Memorandum (ECF 433), Social History Report (ECF 433-2), and character letters (ECF 433-3), which the Court has redacted in a manner consistent with the First Amendment. The unredacted versions of ECF 433, ECF 433-2, and ECF 433-3 shall remain under seal.

In contrast, I shall direct the Clerk to unseal the exhibit that contains media reports about defendant's prosecution (ECF 433-11); the exhibit containing a "Statistical Information Packet" published by the United States Sentencing Commission (ECF 433-12); and the exhibit containing a chart titled "Sentence Type for Sentenced Individuals" (ECF 433-13).

As described earlier, the partial sealing of the Sentencing Memorandum does not prohibit the government from sharing the content of the sealed defense materials, in good faith, with any witness it considers necessary in order to obtain and present evidence in rebuttal.  Nor does this ruling have any bearing on discussion of the content of the defendant's sealed submissions at the sentencing hearing.

An Order follows, consistent with this Memorandum Opinion.


Date: May 31, 2024                                        _____/s/_____

                                                          Ellen Lipton Hollander
                                                          United States District Judge