IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

JACKY LYNN MCCOMBER

*Defendant*.

Criminal No. ELH-21-036

## MEMORANDUM OPINION

This Memorandum Opinion addresses a dispute between defendant Jacky McComber and the government concerning defendant's request to redact significant portions of the government's "Reply Brief to the Defendant's Sentencing Memorandum Concerning the Defendant's Personal History and Characteristics" (ECF 478, "Reply"), as well as exhibits submitted with the Reply (ECF 478-1 to 478-10).  *See also* ECF 498; ECF 502; ECF 515.

### I.      Background

On April 19, 2024, defendant filed a "Sentencing Memorandum" and numerous exhibits addressing the factors under 18 U.S.C. § 3553(a), including the defendant's personal history and characteristics.  ECF 433; ECF 433-1 to ECF 433-13.[1]  Defendant sought to seal the Sentencing

---

[1] The parties' filings in regard to sentencing were prolific.  These included a sentencing memorandum filed by defendant on April 19, 2024, addressing objections to the government's proposed Guidelines enhancements and the Presentence Report.  ECF 435.  Defendant's sentencing filing included eleven exhibits.  ECF 435-2 to ECF 435-12.  However, the defense did not seek to seal or redact that submission, which exceeded 700 pages.

Memorandum.  ECF 432.  Initially, I granted that motion.  ECF 436.[2]  However, the government opposed sealing in its entirety.  ECF 437.  The Sentencing Memorandum remained sealed pending resolution of the dispute.

Thereafter, the defense submitted a proposed, redacted version of the Sentencimg Memorandum, suitable for filing on the public docket.  ECF 456.  The government largely opposed defendant's proposed redactions. ECF 460.  By Memorandum Opinion (ECF 467) and Order (ECF 468) of May 31, 2024, I granted in part and denied in part defendant's request to redact significant portions of the Sentencing Memorandum.

The government's Reply (ECF 478) to the Sentencing Memorandum followed on June 13, 2024.  The government did not file the Reply under seal.  Therefore, on the same date, defense counsel sent an email to Chambers, asking "that the Court provisionally seal" the Reply.  ECF 479-1.  I construed defense counsel's email as a motion to seal the Reply temporarily, and I granted it by Order of June 14, 2024.  *See* ECF 479.[3]  Therefore, the Reply is currently under seal.

In my Order of June 14, 2024 (ECF 479), I directed counsel to confer and to advise the Court, jointly if possible, as to the portions of the Reply that counsel believe require redaction.  I also asked counsel, in their discussions, to "take into account the Court's Memorandum Opinion of May 31, 2024 (ECF 467)."  ECF 479 at 1.[4]

---

[2] In this District, both the government and the defense typically seek to seal their sentencing memoranda.

[3] As discussed in ECF 479, defense counsel sent their email at 3:18 p.m. on June 13, 2024. ECF 479-1.  The government responded by email at about 5:00 p.m., indicating that it had no objection to the defense request.  ECF 479-2.  Given the hour of the day, I directed the Clerk to seal the Reply.  And, I issued an Order to that effect on June 14, 2024.

[4] In response to the Order of June 14, 2024 (ECF 479), counsel appear to have conferred by email.  *See* ECF 498-1; ECF 502.

A few days later, on June 18, 2024, defendant moved to strike the Reply as untimely filed. ECF 480 ("Motion to Strike"). Because sentencing was to begin on June 26, 2024, the Motion to Strike required a speedy resolution. By Memorandum (ECF 482) and Order (ECF 483) of June 21, 2024, I granted the Motion to Strike, in part, and denied it, in part, with leave to the government to move to rescind the Order as improvidently granted. In particular, I indicated that I would disregard certain information in two footnotes (ECF 478 at 9 n.3; *id.* at 12 n.5) as well as two exhibits (ECF 478-4; ECF 478-7).[5] I otherwise declined to strike the submission. Of relevance here, I did not address the propriety of sealing or redacting any portion of the Reply.

Sentencing proceedings were held on June 26, June 27, and June 28 of 2024. ECF 489; ECF 490; ECF 491.[6] During the proceedings, the government made clear that it opposed defendant's requested redactions to the Reply, but it had not yet had an opportunity to present its opposition.[7] The Court permitted the government to submit a response in opposition to defendant's request for redactions, due by July 2, 2024.

---

[5] The information presented in ECF 478 at 12 n.5 regarding defendant's employment by Baltimore City Public Schools ("BCPS") is included in the exhibit docketed at ECF 478-5, which I previously declined to strike. *See* ECF 482 at 6. Therefore, with respect to ECF 478 at 12 n.5, it is clear from my ruling of June 21, 2024, that I did not disregard the portion of the footnote that referenced defendant's employment with BCPS. Instead, I disregarded the sentence that begins, "Admittedly . . . ."

[6] In November 2023, the Court also conducted three days of hearings concerning various sentencing issues. *See* ECF 382; ECF 383; ECF 384. Both evidence and argument were presented.

[7] Government counsel, the lone government attorney currently assigned to the case, had been out of the country until shortly before the sentencing proceedings, and therefore was unable to address the redaction request until after the defendant's sentencing hearings. In particular, during a telephone conference of April 30, 2024, the prosecutor advised that he would "be away through the 24th of June." ECF 452 at 48. The 24th of June was the date on which the prosecutor returned to the office. ECF 507 at 2 n.1.

On July 2, 2024, the government filed a submission objecting to many of the redactions proposed by defendant. ECF 498.  The government also filed a copy of "the defendant's version of [the Reply (ECF 478)] showing the redactions ordered by the Court in in its order of June 20th [sic] (ECF # 482) in blue and [defendant's] additional redactions (in yellow or ocher)."  ECF 499; *see also* ECF 499-1 (highlighted document).

Thereafter, on July 3, 2024, defense counsel filed a letter "in response to the government's response (ECF No. 498) to the defense's proposed redactions to the government's June 13, 2024 sentencing reply brief (ECF No. 478)." ECF 502 ("Defense Letter"). In the Defense Letter, counsel wrote, in part, *id.* at 1:

> The defense had hoped to have the opportunity to confer with the government after we shared our proposed redactions by email last Tuesday in an effort to reach an agreement to present to the Court, or at least to explain our thinking and potentially narrow the issues for this Court's resolution. Nevertheless, we see that Mr. Gray has opted to take the sealing issues directly to the Court without further discussion between the parties, choosing to hypothesize about the defense's purported rationales or motives for seeking to seal portions of the response instead of speaking to the defense directly. The defense stands by its proposed redactions and defers to the Court to interpret and apply its order and opinion sealing portions of Ms. McComber's sentencing submission an exhibits, ECF Nos. 467 & 468.

Also on July 3, 2024, the government filed a letter addressing defense counsel's claim that the government failed to confer with defense counsel regarding the sealing of the Reply.  ECF 504.

By Order of July 3, 2024 (ECF 503), I "renew[ed] my directive requiring counsel to confer regarding the proposed redactions to the Reply."  *Id.* at 2.  And, I instructed counsel to file, by 5 p.m. on July 10, 2024, a copy of the Reply, annotated as follows, *id.*:

1. The redactions proposed by defendant with respect to which the government has no objection shall be highlighted in yellow.
2. The redactions proposed by defendant with respect to which the government has an objection shall be highlighted in blue.

In addition, I permitted "each side [to] submit a memorandum, if it chooses, that further explains its position regarding the proposed redactions to the Reply." *Id.*

On July 7, 2024, the government filed a "Response to Remaining Portions of Defense Counsel's Letter of July 3, 2024." ECF 506. And, on July 8, 2024, the government filed a "Response to the Court's Letter of July 3, 2024." ECF 507 ("Government Response"). In the Government Response, the prosecutor asserted: "[A]lthough the Court's July 3rd letter suggests that it believes the parties should have spent more time trying to reach an accord on the redactions during the week of the sentencing hearing itself, that simply was not feasible as a practical matter." *Id.* at 2. The prosecutor noted that "[t]here is only one government attorney available to work on this case, in contrast to the five . . . on the defense side," and he maintained that, given the "exceptionally demanding three-day sentencing hearing," it was not possible in the "midst" of the hearing "to spend significant additional time" concerning redactions. *Id.* Moreover, the government asserted that "there is no reasonable ground for believing that a further expenditure of time to that end would have been productive." *Id.* Therefore, the government urged the Court to resolve the sealing dispute using "the substantial tools that ha[d] already been made available to" it. *Id.*

By Order of July 8, 2024 (ECF 512), I stated that, "given the government's representation that no agreement regarding the sealing of the Reply is possible," counsel no longer needed to confer regarding proposed redactions to the Reply. But, I affirmed that "an annotated version of the Reply, as described in the Court's Order of July 3, 2024 (ECF 503), would significantly aid my resolution of the dispute." ECF 512 at 3. Therefore, I directed the government to file, by 5 p.m. on July 10, 2024, a copy of the Reply, annotated as follows, *id.* at 4:

1. The redactions proposed by defendant with respect to which the government has no objection shall be highlighted in yellow.

2. The redactions proposed by defendant with respect to which the government
   has an objection shall be highlighted in blue.

I also reiterated that, pursuant to the Order of July 3, 2024 (ECF 503), "each side *may* 'submit a memorandum if it chooses, that further explains its position regarding the proposed redactions to the Reply,' due by 5 p.m. on July 10, 2024." ECF 512 at 4 (quoting ECF 503 at 2) (emphasis in ECF 512).

On July 10, 2024, the government filed a version of the Reply with the redactions to which the government has no objection, highlighted in yellow; the redactions contested by the government highlighted in blue; and the portions of the Reply struck by the Court in its Order of June 21, 2024 (ECF 483), highlighted in green. ECF 515-1 ("Annotated Reply"). The Annotated Reply is supported by a four-page memorandum. ECF 515. Defendant did not file an additional submission. *See* Docket.

## II.    Legal Standard

"'It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings.'" *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 170–71 (4th Cir. 2024) (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014)). "The right of public access [to judicial records and documents] derives from two independent sources: the First Amendment and the common law." *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (citing *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)); *see Oberg*, 105 F.4th at 171.

"For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record.'" *In re Application*, 707 F.3d at 290. According to the Fourth Circuit, "it is commonsensical that judicially authored or created

6

documents are judicial records." *Id.* More generally, "documents filed with [a] court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." *Id.*; *accord Oberg*, 105 F.4th at 171. In addition, a document is a judicial record if it was "'filed with the objective of obtaining judicial action or relief.'" *Oberg*, 105 F.4th at 171 (quoting *In re Application*, 707 F.3d at 291)). "On the other hand, "'the mere filing of a paper or document with [a] court is insufficient to render that paper a judicial document subject to the right of public access.'" *In re Application*, 707 F.3d at 290 n. 6 (citation omitted).

The common law presumes that the public and the press have a qualified right to inspect all judicial records and documents. *Doe*, 749 F.3d at 265; *Wash. Post*, 386 F.3d at 575; *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1985); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("[H]istorically both civil and criminal trials have been presumptively open."). However, the presumption of a common law right of access may be rebutted in "unusual circumstances," where there is a showing that "countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *accord In re Knight*, 743 F.2d 231, 235 (4th Cir. 1984); *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 121 (D. Md. 2009); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 376 (4th Cir. 2021).

Therefore, "[a]t common law, a district judge must weigh the competing interests of the public's access to judicial proceedings and the interests of the individuals in keeping the information private and of the government in ensuring integrity in its processes." *Gonzalez*, 985 F.3d at 376 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978)); *see United States v. Harris*, 890 F.3d 480, 491–92 (4th Cir. 2018)). "Some of the factors to be weighed in the common law balancing test 'include whether the records are sought for improper purposes, such

as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.'" *Wash. Post*, 386 F.3d at 575 (quoting *In re Knight*, 743 F.2d at 235); *see Oberg*, 105 F.4th at 171; *Gonzalez*, 985 F.3d at 376.

"Ultimately, under the common law the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court . . . .'" *Wash. Post*, 386 F.3d at 575 (quoting *Nixon*, 435 U.S. at 598–99) (alteration in *Wash. Post*).  The Fourth Circuit "therefore review[s] a district court's decision concerning common law access for abuse of discretion." *Wash. Post*, 386 F.3d at 575.

The common law right of access is complemented by a "more rigorous" right of access under the First Amendment, which applies to a narrower class of documents, but is more demanding of public disclosure. *Rushford*, 846 F.2d at 253.  "In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Wash. Post*, 386 F.3d at 575 (quoting *Stone*, 855 F.2d at 180).  Specifically, the right applies to any judicial proceeding or record "(1) that has 'historically been open to the press and general public'; and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (citation omitted).

Of relevance here, in *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986), the Fourth Circuit "h[e]ld that the First Amendment right of access applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, as well as to the hearing themselves." And, in *Rushford*, 846 F.2d at 253, the Court concluded "that the more rigorous First Amendment

standard . . . also appl[ies] to documents filed in connection with a summary judgment motion in a civil case." *Accord Oberg*, 105 F.4th at 172–73.[8]

Although the "public's right to access documents under the First Amendment is narrower in scope" than the public's right under the common law, it is "stronger in force." *United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020). As the Fourth Circuit recently said, "common-law protections are broad but shallow, [while] First Amendment protections are narrower but deep." *Oberg*, 105 F.4th at 171. Nevertheless, the "high bar" of the First Amendment "is not insurmountable." *Oberg*, 105 F.4th at 171 n.8.

In particular, "sealing involving judicial records and documents can be accomplished without violating First Amendment rights only if (1) [sealing] serves a compelling interest; (2) there is a substantial probability that, in the absence of [sealing], that compelling interest would be harmed; and (3) there are no alternatives to [sealing] that would adequately protect that compelling interest." *Gonzalez*, 985 F.3d at 376–77 (citations and internal quotation marks omitted); *see also Doe*, 749 F.3d at 266; *In re Application*, 707 F.3d at 290; *Stone*, 855 F.2d at 180; *Wash. Post*, 807 F.2d at 390.

In *Oberg*, the Court provided examples of circumstances under which sealing or closure would not offend the First Amendment. *See Oberg*, 105 F.4h at 1171 n.8. These included the need to protect a minor victim's wellbeing, secure a defendant's right to a fair trial, or to protect a corporation's interest in maintaining the confidentiality of proprietary information. *Id.* (citing cases). The Fourth Circuit "review[s] a district court's decision concerning access under the First

---

[8] It is not entirely clear whether documents filed with a motion to dismiss, but not considered by the court in its ruling on the motion, are deemed to play a role in the adjudicative process. *See Oberg*, 105 F.4th at 173 n.10 (discussing *In re Policy Management Systems Corp.*, 1995 WL 541623, at *3–4 (4th Cir. Sept. 13, 1995)).

Amendment de novo." *Wash. Post*, 386 F.3d at 576 (citing *In re State-Record Co., Inc.*, 917 F.2d 124, 127 (4th Cir. 1990)).

"When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." *Wash. Post*, 386 F.3d at 576. "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because '[o]nly then can it accurately weigh the competing interests at stake.'" *Id.* (quoting *Stone*, 855 F.2d at 181). And, as to procedure, "the district court must (1) give the public adequate notice of a request to seal and a reasonable opportunity to challenge it, (2) consider less drastic alternatives to sealing, and (3) if it decides to seal, state the reasons, supported by specific findings, behind its decision and the reasons for rejecting alternatives to sealing." *Gonzalez*, 985 F.3d at 376 (citing *In re Knight*, 743 F.2d at 235); *see also Wash. Post*, 386 F.3d at 576.

A sentencing memorandum is a judicial record that is presumptively accessible by the public. *See Doe*, 962 F.3d at 146; *Harris*, 890 F.3d at 492; *United States v. Bas*, JKB-17-0324, 2022 WL 1270841, at *2 (D. Md. Apr. 28, 2022). "The party seeking to overcome the presumption" in favor of public access "bears the burden of showing" that denial of access is consistent with the common law and the First Amendment. *Rushford*, 846 F.2d at 253. However, there is some uncertainty in the Fourth Circuit about whether a request to seal a party's sentencing memorandum is evaluated under the common law standard or, instead, the more searching First Amendment standard.

In *Harris*, 890 F.3d 480, the Fourth Circuit evaluated the defendant's request to seal his sentencing memorandum under the common law standard. *Id.* at 492 (beginning analysis by noting that "'the Supreme Court [has] recognized a common law right to inspect and copy judicial records

and documents'") (quoting *In re Knight*, 743 F.2d at 235).  And, citing *Harris*, Judge Bredar stated in *Bas*, 2022 WL 1270841, at *2, that "sentencing memoranda are subject to the more limited presumption of access arising from the common law right to inspect and copy judicial record and documents."  (Citations and internal quotation marks omitted); *see also Kravetz*, 706 F.3d at 57 ("[S]entencing memoranda are judicial documents subject to the common law presumption of public access.").

In *Doe*, 962 F.3d at 146, the Fourth Circuit suggested that materials filed in connection with a sentencing are properly evaluated under the First Amendment standard, not the common law standard.  In *Doe*, the district court declined to seal an order that made evident the defendant's status as a government cooperator.  *Id.* at 142.  On appeal, the Fourth Circuit noted that its "precedent largely supports applying the public's First Amendment right of access to the district court's order."  *Id.* at 146.  And, citing *In re Wash. Post*, 807 F.2d at 390, the *Doe* Court stated, 962 F.3d at 146: "We have held that the First Amendment right applies to sentencings and plea hearings, as well as to documents filed in connection with those proceedings."  However, the Court declined to "conclusively decide th[e] issue."  *Doe*, 962 F.3d at 146.  Instead, it "assume[d] without deciding that the First Amendment applie[d]" to the district court's order, and concluded that neither the common law nor the First Amendment precluded sealing the order.  *Id.*[9]

---

[9] In contrast to a sentencing memorandum, which is presumptively accessible by the public, a presentence report is generally maintained under seal.  Local Rule 213.1(a) provides:

> Unless the Court orders that a presentence report, supervised release report, violation report, probation record, or portion thereof be placed in the public record, such report or record is a confidential internal court document to which the public has no right of access. Except as otherwise authorized by Fed. R. Crim. P. 32, by this Rule, or otherwise by law, the probation department shall not, unless otherwise ordered by the Court, disclose to any person any such report or record.

### III.    Discussion

In the Memorandum Opinion of May 31, 2024 (ECF 467), I "follow[ed] the example of the Fourth Circuit in *Doe*, 962 F.3d 139, and assume[d], without deciding, that the more rigorous First Amendment standard applies to the information subject to the proposed redactions."  ECF 467 at 20.  Applying this standard, I "conclude[d] that, with some exceptions," defendant's proposed redactions to the Sentencing Memorandum (ECF 433) were "narrowly tailored to serve the compelling interests of defendant's children and other third parties in the privacy of information concerning their health and personal lives."  ECF 467 at 19–20.  In addition, I concluded that some redactions could be "appropriately applied to information that concerns defendant alone, because this information consists of 'details of . . . family history . . . history of diseases and treatments . . . [and] sexual orientation and practices' that [was] of 'peripheral' importance to the Court's sentencing decision."  *Id.* at 20 (quoting *Kravetz*, 706 F.3d at 63) (additional citation and internal quotation marks omitted).

I adopt and incorporate these principles here.  Accordingly, I shall approve defendant's proposed redactions to the Reply and to the exhibits only if the redactions are narrowly tailored to serve (1) the compelling interests of defendant's children and other third parties in the privacy of information concerning their health and personal lives; or (2) defendant's compelling interest in

---

With regard to the presumptive sealing of presentence reports, Standing Order 2015-02 explains, 1:00-mc-0308, ECF 60:

> In the great majority of cases the personal history in Part C [of the presentence report] does not factor into the judge's calculation of the guideline range.  Rarely is such information germane to a determination of the defendant's offense level or criminal history category, or whether to depart from the guidelines.  Part C information becomes relevant primarily when the judge is deciding (i) what sentence to impose within the guidelines range, (ii) whether to sentence outside the guideline range, and (iii) what special conditions of post-incarceration supervision (*e.g.*, drug testing) to impose.

the privacy of highly sensitive personal information, such as that pertaining to medical conditions, which was of peripheral importance to the Court's sentencing decision.

I begin by considering the proposed redactions to the Reply. I then turn to evaluate the proposed redactions to the exhibits.

## A.

Many of the proposed redactions to the Reply pertain to information obtained by the National Security Agency ("NSA" or "Agency") in connection with its investigation of defendant's suitability for a security clearance.  *See* ECF 515-1 at 4, n.2, 5–17.  Some of the information in issue was gathered more than two decades ago, in or around 2002, as part of the NSA's original investigation of defendant's background.

The government obtained the information in issue after trial, in response to a request from defense counsel for production of defendant's security investigation file at NSA.  *See* ECF 478 at 5 n.2.  Once the government learned of the information in NSA's security investigation file, it presented some of the information in the Reply.   In the government's view, the information obtained years ago by the NSA, during its security clearance investigation, demonstrated that defendant has a history "of dishonest and self-seeking conduct stretching back to the mid-1990s." ECF 478 at 10 (typeface altered).

In an email to government counsel explaining the basis for the proposed redactions, defense counsel asserted that redaction of the investigatory material was "consistent with the Court's prior order sealing an interview" with the NSA Office of Inspector General ("OIG").  ECF 498-1 at 2. And, in defendant's submission of July 3, 2024, she asserts, ECF 502 at 1–2:

> [A]s discussed at the sentencing hearing, NSA took no action on these reports, instead choosing to grant Ms. McComber the highest level of security clearance. In this respect, those reports are analogous to a disciplinary investigation that resulted in no finding, like those often found in the context of police internal affairs

investigations. The government routinely asserts that IAD investigations with no findings should be given no weight and be sealed. We see no reason to treat an analogous NSA investigation differently.

However, defendant cites no authority in support of her suggestion that sealing is appropriate if information gathered during a "disciplinary investigation" did not result in a "finding" of impropriety. *Id.* at 1.

The government opposes defendant's proposed redactions to NSA's investigatory material. *See* ECF 515-1 at 17; ECF 498 at 5–10. According to the government, "the defense's apparent position that any negative information relating to a defendant's past conduct from prior to the period covered by their crimes should be redacted is fundamentally inconsistent with the express language of 18 U.S.C. § 3553(a)(1), which directs the sentencing court to consider 'the history and characteristics of the defendant . . . .'" ECF 498 at 7 (quoting 18 U.S.C. § 3553(a)(1)).

I readily conclude that defendant's proposed redactions to the information obtained as part of the NSA's assessment of her suitability for a security clearance are largely inconsistent with the First Amendment. As an initial matter, I cannot accept defendant's unsupported suggestion that "investigations with no findings" are "routinely" sealed at the request of the government. *Id.* In fact, the authority of which the Court is aware suggests that courts *disfavor* the sealing of investigatory records when they contain information relevant to a court's decision. *See Scott v. City of Durham*, CCE-20-558, 2022 WL 767557, at *4–7 (M.D.N.C. Mar. 14, 2022) (collecting cases). And, the investigatory information presented by the government in the Reply was relevant to an assessment of "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). It is far from the kind of information about the most intimate and sensitive aspects of defendant's life that I previously characterized as "'peripheral'" to my sentencing decision. ECF 467 at 23 (quoting *Kravetz*, 706 F.3d at 63) (additional citation and internal quotation marks omitted).

14

Therefore, I decline to adopt defendant's proposed redactions to the discussion of the information contained in defendant's NSA security investigation file.

Defendant also seeks to redact a footnote in the Reply in which the government calls into question the impartiality of a "Social History Report" (ECF 433-2; ECF 470) that was prepared by a social worker employed by the Office of the Federal Public Defender and submitted as an exhibit to the Sentencing Memorandum. *See* ECF 515-1 at 2 n.1. Although the basis for this proposed redaction is not entirely clear, it appears that defendant considers the footnote an inappropriate "personal attack[] on [the social worker's] character and professionalism." ECF 502 at 2. The government opposes the redaction of all but six words of this footnote. *See id.*

I see no basis on which to approve the redaction of the entire footnote, as requested by defendant. The government's attempt to impugn the impartiality of the social worker, the author of a document submitted by defendant's lawyers in support of a sentencing brief, was a legitimate advocacy tactic. Nevertheless, in order to avoid needless prejudice to a third party, I shall approve the redaction of the six words identified by the government.

Defendant next requests the redaction of a footnote listing certain financial liabilities owed by defendant. *See* ECF 515-1 at 19 n.12. The government states that it became aware of these liabilities when it received a "March 27, 2023 draft of" defendant's presentence report. ECF 515-1 at 19; *see id.* at 19 n.12. The government consents to the redaction of the footnote to the extent that it identifies the amount of the various liabilities and to whom they are owed. *Id.* at 19 n.12. However, the government opposes the redaction of the portion of the footnote that states, *id.*: "The list of the defendant's liabilities included a number of other items of interest that appear to reflect an extraordinarily self-indulgent and spendthrift life-style. These include: . . . ."

A presentence report is generally maintained under seal.  *See* Local Rule 213.1(a).  The portion of the footnote providing the specific amounts of defendant's financial liabilities and to whom they are owed appears to be little more than a restatement of information contained in a draft presentence report.  *See* ECF 515-1 at 19 n.12.  Therefore, I shall approve the redaction of this information.  In contrast, I decline to approve the proposed redaction of the sentences that characterize the liabilities as evidence of the "extraordinarily self-indulgent and spendthrift life-style" pursued by defendant.  *Id.*  A statement does not become an appropriate subject of redaction simply because it characterizes in general terms the content of a presentence report.  And, the government's argument concerning the significance of these liabilities is relevant to the public's right to information regarding defendant's "history and characteristics."  *See* 18 U.S.C. § 3553(a)(1).[10]

Other redactions proposed by defendant pertain to information about defendant's relationships with two former husbands.  *See* ECF 515-1 at 23–31.  Defense counsel appear to suggest that the proposed redactions are consistent with, and justified by, the Court's "prior order sealing . . . descriptions of Ms. McComber's relationship with" defendant's former husband, Robert Kimmel.  ECF 498-1 at 2.  The government agrees that allegations concerning the conduct of Mr. Kimmel are appropriately redacted.  *See* ECF 515-1 at 26; ECF 498 at 14.  In addition, the government agrees that information concerning the personal life of defendant's first husband, and defendant's criticisms of her first husband, is properly redacted.  *See* ECF 515-1 at 26–26; ECF 498 at 14.

---

[10] Defendant did not request the redaction of a sentence in the Reply that quoted from the probation officer's "revised [presentence] report dated November 8, 2023."  *See* ECF 515-1 at 20.  Nevertheless, consistent with the principle that presentence reports are generally maintained under seal, I have redacted this sentence from the version of the Reply to be published on the public docket.

However, the government opposes the redaction of information regarding Mr. Kimmel that, in the government's view, tends to discredit defendant's allegations of mistreatment by him or otherwise present him in a favorable light.  *See* ECF 515-1 at 25–31.  In particular, the government opposes the redaction of information presented in rebuttal to a portion of the Social History Report, itself redacted (ECF 470), that discussed a purported instance of malicious behavior by Mr. Kimmel and his partner.  *See* ECF 515-1 at 29–31; ECF 498 at 14–15.  And, the government opposes the redaction of information favorably describing certain aspects of Mr. Kimmel's personal life since his separation from defendant.  *See* ECF 515-1 at 31.

In my view, the redaction of information concerning the details of defendant's alleged mistreatment by Mr. Kimmel is narrowly tailored to further the compelling interest in preserving the privacy of Mr. Kimmel, a third party.  And, *contra* the government, I see no reason why this compelling interest in preserving third-party privacy does not also require the sealing of the government's rebuttal to the recitation in the Social History Report of the alleged instance of malicious behavior by Mr. Kimmel and his partner.

The government appears to reason that the Court's decision to redact the Social History Report's recounting of this incident was itself a mistake, because that "portion of the Social History Report had nothing to do with 'sensitive aspects of defendant's medical and personal history.'" ECF 498 at 14 (citing ECF 467 at 24)).  However, the government misunderstands the basis for the Court's decision to seal the disputed portion of the Social History Report.  The Court considered it necessary to redact this portion of the Social History Report in order to protect the privacy of Mr. Kimmel and his partner.  *See* ECF 467 at 24 (concluding that "it is necessary to redact substantial portions of the [Social History] Report," including the material describing the incident in question, "to protect the privacy of third parties").  This same concern for the privacy

of third parties warrants the redaction of the information the government has presented in rebuttal to the Social History Report's redacted discussion of the alleged malicious behavior by Mr. Kimmel and his partner.

I also conclude that the redaction of certain information concerning the personal lives of Mr. Kimmel (defendant's second husband), as well as defendant's first husband, is consistent with the First Amendment.  A sentencing court must evaluate the history and characteristics of the defendant—not the history and characteristics of the defendant's spouse or other persons who are close to the defendant.  To be sure, the characteristics of a defendant's family or friends could inform a court's assessment of a defendant's own history and characteristics.  But, in my view, the information about the personal lives of defendant's former husbands is only tangentially relevant to defendant's own history and characteristics.  Such tangential relevance does not provide a basis for publishing the third-party information on the public docket.

I turn to address the propriety of redacting the portions of the Reply I previously struck in the Memorandum (ECF 482) and Order (ECF 483) of June 21, 2024.  There, I indicated that I would disregard certain content in two footnotes (ECF 478 at 9 n.3; *id.* at 12 n.5) as well as two exhibits (ECF 478-4; ECF 478-7), on the basis that the government's Reply was untimely and inclusion of the stricken material, virtually on the eve of sentencing, would be unfair to the defendant.

The parties appear to have assumed that my decision to *strike* these materials was, necessarily, also a decision to *seal* them.  *See* ECF 498-1 at 2 (email from defense counsel identifying "portions of the Reply that should be redacted in accordance with the Court's order striking certain portions of the Reply"); ECF 499 at 1 (letter from government identifying "redactions ordered by the Court" in the Order of June 21, 2024).  This assumption is flawed; a

motion to strike a submission as untimely is evaluated under a different standard than a motion to seal a submission.  *Compare* Fed. R. Crim. P. 45(b)(1)(B) (allowing extension of filing deadline upon a showing of "excusable neglect") *with Gonzalez*, 985 F.3d at 376–77 (requiring proponent of sealing to demonstrate that sealing is narrowly tailored to a compelling government interest).

Of course, because I disregarded certain information at ECF 478 at 9 n.3, ECF 478 at 12 n.5, ECF 478-4, and ECF 478-7, that information was of no aid to the Court in fashioning a sentence, and therefore also of no aid to the public in an attempt to understand and evaluate the basis for the sentence that was imposed.  As noted, "'the mere filing of a paper or document with [a] court is insufficient to render that paper a judicial document subject to the right of public access.'"  *Id.* at 290 n. 6 (citation omitted).

However, the Fourth Circuit's recent decision in *Oberg*, 105 F.4th 161, suggests that the First Amendment right of access can attach to documents even when the documents are not the basis of a judicial decision.  In *Oberg*, the case was resolved by settlement before the district court ruled on a motion for summary judgment.  *Id.* at 172.  The defendants then sought to seal certain documents submitted in connection with the unadjudicated summary judgment motion.  *Id.*  They "argue[d] that because the original case settled before a summary judgment ruling, the documents [were] of little value in understanding what happened in the litigation."  *Id.* at 173.

The Fourth Circuit disagreed.  It stated that its "precedents are clear that the First Amendment right of access to summary judgment materials does not depend on . . . judicial reliance on the documents in resolving the motion."  *Id.* at 172 (citing *Rushford*, 846 F.2d at 252).  And, the Court said that "it is up to the public to decide 'why was the case was brought (and fought)[] and what exactly was at stake in it.'"  *Oberg*, 105 F.4th at 173 (quoting *Mueller v. Raemisch*, 740 F.3d 1128, 1135–36 (7th Cir. 2014)).  The Court concluded that, "irrespective of

whether a district court ever resolves a summary judgment motion, the public has a presumptive First Amendment right to access documents submitted in connection with it."  *Id.*

In light of *Oberg*, I conclude that the stricken material is subject to a presumption of public access under the First Amendment.  To be sure, the stricken material was not a basis for the sentence that was imposed.  But, the Court's choice not to consider the information is itself a judicial decision that the public is entitled to evaluate.  Indeed, the information a court chooses *not* to consider can be just as important to evaluating a sentencing decision as the information the court does consider.

Nevertheless, in my view, publishing the stricken material on the public docket would serve no function other than "to 'gratify private spite or promote public scandal.'"  *Kravetz*, 706 F.3d at 63 (quoting *Nixon*, 435 U.S. at 598).  I struck the material because, given the timing of its submission, defendant would have been precluded from responding to or disputing the potentially prejudicial content.  I do not understand the First Amendment to require publication on the public docket of potentially prejudicial information to which a defendant has had no opportunity to respond, and which the Court has declined to consider as the basis for any judicial decision. Therefore, I shall redact from the Reply (ECF 478) the material stricken by the Court's Memorandum (ECF 482) and Order (ECF 483) of June 21, 2024.

**B**.

Defendant requests significant redactions to the exhibits appended to the Reply.  *See* ECF 498-1 at 2–3.  In particular, defendant seeks to seal, apparently in full, the exhibits filed at ECF 478-1; ECF 478-3; ECF 478-4; ECF 478-5; ECF 478-7; ECF 478-8; ECF 478-9; and ECF 478-10. And, defendant seeks to seal the exhibit filed at ECF 478-2 "in full . . . <u>except for</u> . . . portions . . .

[that] were filed on the public docket previously," namely, those portions at ECF 478-2 at 5–6, 9. ECF 498-1 at 2 (emphasis in ECF 498-1).

As an initial matter, I shall approve the sealing of the exhibits filed at ECF 478-4 and ECF 478-7, which I struck by Memorandum (ECF 482) and Order (ECF 483) of June 21, 2024.  As explained, the publication of this material on the public docket, which defendant had no opportunity to address, and which the Court did not consider, would serve no end other than the embarrassment of the defendant.

The exhibits at ECF 478-1, ECF 478-2, and ECF 478-3 contain statements made by former employees of InfoTek Corporation ("InfoTek"), the company of which defendant is the President, Chief Executive Officer, and sole owner, during interviews conducted by the NSA.  In particular, the exhibit filed at ECF 478-1 is a memorandum dated December 10, 2019, that describes an OIG interview of Shilo Weir, the Chief Operations Officer of InfoTek from September 2016 to October 2017.  *See* ECF 478-1 at 2.  The exhibit at ECF 478-2 contains excerpts from an OIG interview in January of 2019 of Paul Rooney, Jr., the President of InfoTek from February 2014 until February 2015.  *See* ECF 429-1 at 28 n.27 (citing ECF 298 at 140, 151).  And, the exhibit at ECF 478-3 contains a summary of an interview conducted by NSA personnel in September 2018 of Craig Plunkett, formerly InfoTek's Vice-President for Contracts.  *See* ECF 293 at 12.

Defendant suggests that the sealing of these exhibits is consistent with, and justified by, the Court's Memorandum (ECF 467) and Order (ECF 468) of May 31, 2024, in which the Court ordered the sealing of an excerpt of an OIG interview of Dwayne Preston, the former Chief Financial Officer of InfoTek.  ECF 498-1 at 2; *see* ECF 467 at 28 (stating decision to seal ECF 433-6).  In the sealed interview excerpt, Preston commented on the death by drowning of defendant's stepson.  *See* ECF 433-6.  In the Memorandum of May 31, 2024, I ordered the sealing

of this interview excerpt, based on the Court's interest in protecting the privacy of third parties. *See* ECF 467 at 25–26.

However, I cannot accept defendant's contention that my decision to seal the excerpt from the OIG interview of Dwayne Preston, *see* ECF 467 at 28, is consistent with, or in any way provides justification for, the sealing of the exhibits containing summaries or excerpts of the interviews with Shilo Weir (ECF 478-1), Paul Rooney, Jr. (ECF 478-2), and Craig Plunkett (ECF 478-3). These materials, unlike the excerpt of the interview with Dwayne Preston, do not implicate the privacy interests of third parties. And, they contain information relevant to an assessment of defendant's "history and characteristics." 18 U.S.C. § 3553(a)(1).

It is also noteworthy that Weir and Preston testified at trial.[11] Some of their testimony concerned topics addressed in the materials that defendant seeks to seal.

Under all the circumstances, there is no basis for sealing the summaries or excerpts of the interviews with Weir, Rooney, and Plunkett. Therefore, I decline to seal the exhibits docketed at ECF 478-1, ECF 478-2, and ECF 478-3.

ECF 478-5 is a summary of an interview of one of defendant's former employers, conducted as part of the NSA's investigation of defendant as a candidate for a security clearance. The investigative report contained in the exhibit also describes statements made by defendant in response to her former employer's comments, *see* ECF 478-5 at 4, and provides information about defendant's employment history and family members. *Id.* at 5. In my view, the former employer's comments about defendant's honesty and trustworthiness, and defendant's statements in response to these comments, were relevant to an assessment of defendant's "history and characteristics," 18

---

[11] Plunkett did not testify at trial. However, he testified at a sentencing hearing on November 16, 2023, largely concerning the so-called "Guinther Letter." *See* ECF 382 at 116–153.

U.S.C. § 3553(a)(1).  However, to protect the privacy of third parties, I shall redact the few items of information pertaining to defendant's family, which is of no importance to the public's understanding of the sentence imposed.  *See* ECF 478-5 at 5.

The exhibit filed at ECF 478-6 consists mostly of documents filed in a civil lawsuit against InfoTek.  The exhibit also contains a three-page letter from the government, presenting its objections to a draft presentence report dated November 8, 2023.  Curiously, the parties have not addressed the propriety of sealing all or part of this exhibit.  *See* ECF 498; ECF 498-1; ECF 502.

In my view, the portions of the government's letter that describe details of the draft presentence report should remain under seal.  As noted, courts in this District generally maintain presentence reports under seal, and the government's letter discusses the content of the draft report in detail.  In contrast, I see no reason why the portions of the government's letter that do not describe details of the draft presentence report should be placed under seal.  Nor do I see any reason why the remainder of the exhibit should be sealed.  Therefore, I shall redact ECF 478-6 in a manner consistent with this Memorandum Opinion.

The exhibit docketed at ECF 478-8 is a copy of messages exchanged in June and July of 2016, between defendant and Robert Kimmel, on the messaging platform Lync.[12]  The government submitted the exhibit in an effort to rebut defendant's allegations of mistreatment by Mr. Kimmel. *See* ECF 478 at 26.  I decided, *supra*, that the government's characterization of these messages in the body of the Reply should be accessible on the public docket.  Nevertheless, the public's understanding of the sentence imposed does not require the disclosure of the messages themselves.

---

[12] Defendant's presentence report indicates that she and Mr. Kimmel divorced "[i]n or around 2016."  ECF 439, ¶ 7.

The messages themselves were private communications between defendant and Mr. Kimmel, at a time when they were apparently still married. In any event, as a third party, Mr. Kimmel had an expectation of privacy in the messages. In my view, maintaining these messages under seal, while making the government's characterization of them available on the public docket, is consistent with the strictures of the First Amendment.

The exhibit docketed at ECF 478-9 is a summary of an NSA interview with Mr. Kimmel, regarding defendant's alleged excessive use of alcohol. The government does not object to the sealing of the exhibit. ECF 498 at 18. This summary does not implicate the privacy interests of third parties. Nor does it concern medical information about defendant. Nevertheless, in my view, sealing of the exhibit is appropriate, because the information it contains is of peripheral importance to the public's understanding of the basis for the sentence imposed. Indeed, the main effect of disclosure would be "to gratify private spite or promote public scandal." *Kravetz*, 706 F.3d at 63 (citations and internal quotation marks omitted). Therefore, I shall direct the Clerk to maintain under seal the exhibit filed at ECF 478-9.

I address, finally, the proposed sealing of the exhibit filed at ECF 478-10, which the government opposes. This exhibit contains a portion of the Social History Report, currently redacted (ECF 470 at 15), that discusses a purported instance of malicious behavior by Mr. Kimmel and his current partner. The exhibit also contains an email from Mr. Kimmel's partner to government counsel disputing the Social History Report's characterization of the behavior in question. *See* ECF 478-10 at 4.

I have previously described the statement provided by Mr. Kimmel's partner as "illuminating," because it suggests that Mr. Kimmel and his partner did not act with the malice attributed to them by the Social History Report. ECF 482 at 6. But, whatever "illumination" this

exhibit accomplished chiefly concerned the behavior of Mr. Kimmel and his partner—not that of defendant.  I cannot see the benefit to the public of airing on the public docket a dispute about the behavior of third parties.

### IV.    Conclusion

For the foregoing reasons, I shall order the Reply (ECF 478) and its exhibits (ECF 478-1 to ECF 478-10) sealed in part and unsealed in part.  In particular, I shall direct the Clerk to file on the public docket a version of the Reply (ECF 478), the exhibit filed at ECF 478-5, and the exhibit filed at ECF 478-6, which the Court has redacted in a manner consisted with the requirements of the First Amendment.  And, I shall direct the Clerk to unseal ECF 478-1, ECF 478-2, and ECF 478-3.  But, I shall direct the Clerk to maintain the seal upon ECF 478-4, ECF 478-7, ECF 478-8, ECF 478-9, and ECF 478-10.

An Order follows, consistent with this Memorandum Opinion.

Date: July 23, 2024                                                           /s/
                                                              Ellen Lipton Hollander
                                                              United States District Judge